JOHN J. FARRELL ET AL., PLAINTIFFS-RESPONDENTS, v. NEW JERSEY POWER AND LIGHT COMPANY, DEFEND-ANT-APPELLANT.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant, *Joseph Coult.*

For the respondents, *Sylvester C. Smith, Jr., Egbert Rosecrans* and *Robert Carey.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. The respondent John J. Farrell was the owner of lands on Washington avenue, in Washington, Warren county. The buildings upon the lands were used as a hotel, conducted by him and his wife, the other respondent, and known as the Farrel Arms Plaza Hotel.

The appellant owned, used and controlled gas mains in Washington avenue, for the purpose of conducting, transmitting and purveying, as a public utility, gas for lighting and heating purposes.

In the latter part of 1929 and the early part of 1930 the American Telephone and Telegraph Company constructed conduits through Washington avenue, together with manholes, for the purposes of carrying its wires under the surface of the highway. In this plan or system of underground construction was included a manhole which was built in the highway in front of the property of the respondents.

On July 4th, 1930, there was an explosion in this manhole of such force and violence as to do considerable damage to the hotel building.

Suit to recover for such damages was brought by the respondent against the appellant and a trial of the cause resulted in a verdict in favor of the former against the latter for $18,000, which, upon a rule to show cause obtained by the appellant-defendant, heard by the trial judge. resulted in a reduction to the sum of $14,000, which was accepted by the respondents and a judgment for that amount entered against the appellant, from which it appeals and assigns thirty-one grounds for reversal based upon exceptions to trial errors reserved under the aforesaid rule to show cause which was directed solely to the alleged excessiveness of the verdict. Such of the grounds for reversal as are argued before this court are presented under three general points.

Point 1. That it was error to refuse to nonsuit and direct a verdict in favor of the defendant-appellant.

Hereunder it is urged that there was no proof of the following essential matters:

1. That the explosion was caused by gas.

2. That if gas was the cause it was the gas from the pipes and mains of the appellant.

3. That the appellant was shown in any specific way to have failed to perform any duty owing from it.

In the argument ·presented under this ground, and these points, much stress is laid upon the asserted fact that the proofs do not show that the gas which was noticed as escaping and testified to by the several witnesses was illuminating gas such as was being conducted and sent through the mains of the appellant. This appears to us to be unsound. All the witnesses referred to it as gas and throughout the trial of the cause no one questioned, or suggested, that it was not what is commonly known as illuminating gas, such as was being conveyed by the appellant but on the contrary it is apparent that it was universally considered and accepted as being such gas.

Under this point it appears to be further urged that the duty resting upon the plaintiffs-respondents was to produce definite, affirmative proof of some particular and specific leak or defective pipe, main, or apparatus from which the gas escaped and to which defect and condition the appellant's attention had been particularly called and under such facts and conditions it had failed to remedy the defect or condition of disrepair; in other words, that there must have been proof definitely and accurately tracing the leakage of gas from the pipes and mains of the appellant to the manhole in question, with like definite and positive proof that such gas exploded in the manhole, causing the damage in question.

In the state of the proofs in this case this argument is unsound.

In support thereof there are cited *National Sheet Metal Roofing Co.* v. *Public Service, &c., and New York Telephone Co.,* 5 *N. J. Mis. R.* 503; *McCombe* v. *Public Service,* 95 *N. J. L.* 187; *Price* v. *New York Central,* 92 *Id.* 429; *Bien* v. *Unger,* 64 *Id.* 596; *Adriance* v. *Schenck Bros.,* 95 *Id.* 185.

From these cases certain fundamental principles are to be gathered:

1. Negligence must be proved; it will not be presumed.

2. Negligence may be inferred, and that such inference must be based upon facts established from which the inference may reasonably be made.

Now it is argued that while a duty of using reasonable care rests upon a utility making use of a public street to convey and transport its illuminating gas, the doctrine, *res ipsa loquitur*, is not applicable in this case as against and toward the appellant.

As to this it must be said that the cause was not tried upon this theory nor did the trial court submit it to the jury with any such suggestion or instruction.

While appellant does not seriously deny that negligence may be inferred from established facts, circumstances and conditions, it is argued that the jury were allowed to "base an inference upon an inference, or a presumption upon a presumption, which is universally condemned in the law," and specifically that there was a mere inference (a) that there was a leakage of gas; (b) that it was illuminating gas; (c) that it came from appellant's mains; (d) that it found its way into the manhole in question and that it there exploded. But we do not find this to be the situation. There is an abundance of proof, by various witnesses, of the odor of escaping gas, in and about the place and time, proximately, of the explosion and that illuminating gas had been present in this manhole in question, and others nearby, to such an extent throughout its and their entire construction including the rodding or drawing the cables through, and as late as March preceding the happening when the construction work was completed, as to require workmen of the telephone company to use masks and blower fans to remove it; that the appellant was the only person, or company, having mains in the highway for the purpose of conveying gas, and that the driver of the car that passed over the manhole as the explosion took place testified that he smelled gas and "was alive with it, full of it."

From the testimony it was inferable therefore that the explosion was due to gas; that such gas was the ordinary illuminating gas; that the only assignable source of such gas was the pipes of the appellant; that the escape of gas

meant leaky pipes; that the continuance of that condition meant failure to maintain and repair them; and in fine, that the explosion resulted from the leakage from the pipes. All these things were inferences, but inferences that were entirely legitimate as based on the testimony above noted. Each the jury was entitled to find as a fact. Given those facts, then in order to show negligence it was necessary to show, under elementary rules, either that the appellant was actually notified of the situation and neglected for an unreasonable time to rectify it; or that the condition had persisted long enough to be discovered by the appellant in the exercise of due care, and rectified by the use of due diligence.

The case abounds with the proofs just recited and that the appellant had notice of much thereof, and that certainly it was not a duty resting upon the respondents to locate such particular leaks, the cause thereof and specifically bring them to the attention of the appellant. Such a requirement would call upon a damnified suitor to establish facts beyond his knowledge, reach, and control.

Point 2. There was error in the admission of improper proof to establish the value of the hotel building immediately before and immediately after the injury complained of.

Without taking up these alleged errors with particularity, it is enough to say that we find no harmful or prejudicial error in any of them.

The objections appear to go in three directions: 1. That it was error to show the selling price of other hotel properties not only in the borough of Washington but in other nearby municipalities of a like character and as to buildings therein said to be comparable to the property in question.

These proofs were offered for the purpose of presenting facts upon which witnesses said to be experts in hotel property values in Washington could base their estimates of value of the property of the respondents.

We find no error therein. In the final analysis its value and probative force was for the jury.

2. That the witnesses who testified were not properly qualified. This was initially a question for the trial judge and ultimately for the jury as to the value and weight of the proofs.

3. That a proper rule of admeasuring the damages was not used and applied.

It is asserted, and we think it must be admitted, that the proper rule is, the reasonable cost of necessary repairs, if it appears that the cost of such repairs is ascertainable with reasonable certainty and it appears that such repairs will restore the building to a condition substantially the same as that in which it was before the damage, and if it appears that the cost of such repairs does not exceed the diminution in value caused by such injury; the primary rule being the difference in value immediately before and immediately after the injury or damage.

This was the instruction given to the jury by the trial judge.

4. That the witness Christine was not qualified to testify to the value of the building either before or after the happening.

Measured by the rule laid down by us in *Essex Park Commission* v. *Brokaw*, 107 *N. J. L.* 110, we think the complaint under this topic is not justified.

Point 3. The court erred in charging the jury and permitting a witness to testify what he had said by telephone to some person unknown to him who answered his call of the appellant's telephone number, at its gas plant in Easton, Pennsylvania.

The portion of the charge of the court excepted to is: "In this connection I think the court should say to you that in any emergencies, such as the flow of water or gas, that when one gets the number of the company in control of the supply from the usually consulted telephone directory book, and calls its main or branch offices a reasonable time before the happening of an accident to notify the person or corporation of a dangerous condition, a reasonable notice is given, and failure to attend thereto, upon receipt of such notice, may be found as a fact to be neglect. It is the duty of the company to have a person of sufficient intelligence and capability at the telephone for the purpose of recording messages of this character, since it would be the most likely means, and the one usually employed, to give this information."

In the exception to this instruction no ground or basis of error is asserted. In its brief the appellant urges that the error was that the jury was instructed that all that was necessary to constitute notice was the consulting of a telephone directory, the calling of the number so ascertained and the giving of a message to any person answering the call regardless of whether or not such person is recognized or identified.

Under this same point it is argued that it was error for the witness, Nugent, to be permitted to answer the question: "*Q.* What did you say to that person?"

This was after the witness had testified that after, as engineering assistant of the New Jersey Bell Telephone Company, he had brought the matter of gas leaks from the appellant's mains to the attention of one Hankenson, a local agent of the appellant, the latter had referred him to a Mr. Beatty, the superintendent of the gas works of the appellant at Easton, Pennsylvania; that thereupon he had called by telephone the appellant at "Easton 3000," and had asked for the superintendent of the gas works, Beatty; that upon such request he spoke to some one at the aforesaid telephone connection at Easton but could not say it was Beatty or any other person known to him or whose voice he recognized and that he said to such person, whoever it was: "I told them about the same as I had told to Mr. Hankenson, that we had been forced to stop our work due to the presence of gas in the manhole in Washington borough and I asked if he could do something about it or about the leak and he told me at that time he * * *." Here the answer was interrupted by an objection which was sustained, and what reply the person at the Easton end of the telephone made was not permitted to be narrated by the witness.

With respect to this it is urged that it was error to permit the answer because the witness had testified that he did not recognize the voice of the person to whom he was talking. Prior to the foregoing question and answer the witness had testified, "I just called Easton 3000 and asked for Superintendent Beatty, superintendent of the gas works," and as to the identity of the person to whom he spoke, "I have no real way of proving that."

In support of the contention that the foregoing instruction and the ruling upon evidence were erroneous, *Murphey-Hardy Lumber Co.* v. *Roder,* 83 *N. J. L.* 34; *Smarak* v. *Segusse,* 91 *Id.* 57; *Citrin* v. *Tansey,* 107 *Id.* 368, and *Manzueto* v. *Fackler,* 109 *Id.* 374, are cited.

In *Murphey-Hardy Lumber Co.* v. *Roder, supra,* the voice of the party called was identified by the party calling him. The conversation was denied and it was asserted that the telephonic conversation was erroneously admitted and the Supreme Court held that it was unnecessary "to go into the broad question of telephone conversation or to lay down any general rule touching communications of this sort" for the reason that there was testimony touching the identification of the voice of the party whose reply was testified to. The court further said : "In view of the commercial use of the telephone and its general trustworthiness as tested by average experience, the rule to be adopted is that where in the course of a business transactions one party calls upon another by his telephone number, recognizes and identifies his voice and discusses with him some phase of the business they have together, it is for the jury to determine, if the conversation is denied, whether it took place and of what it consisted. It is not intended to be intimated that this is the extent of the rule but only that it is all that the decision of the present case requires."

In view of the foregoing it is appropriate at this time to say that in the case before us there is no denial that the telephone call was made or received or that what was testified to was not said or that the person receiving the message was not Superintendent Beatty.

In *Smarak* v. *Segusse, supra,* it was argued that the trial judge erred in refusing "to permit the veterinarian, offered by the defendant as a witness, to testify to a conversation by telephone with one whose voice the witness said he did not recognize but who informed witness he was a servant of the plaintiff," the Supreme Court held that this was not error and did not come within the rule laid down in *Murphey-Hardy Lumber Co.* v. *Roder, supra.*

In *Citrin* v. *Tansey, supra,* this court applied the rule as

laid down in the two cases in the Supreme Court just referred to.

In Manzueto *v.* Fackler this court again applied the same rule but in that case there was proof by way of admission that the message had been received.

The matter here presented is not in all particulars identical with the foregoing cases.

The primary question is, was the proof which was admitted over objection, competent; with its probative force we are not concerned.

As applied to the matter before us it indubitably made the testimony, which is attacked, competent, because it appears that the witness having on one or more occasions addressed a complaint of gas leaks to one Hankenson, who seems not to be disputed to have been a local agent of the appellant, he finally directed the witness to address his complaint to one Beatty, the appellant's agent in charge of the gas works at its plant in Easton, Pennsylvania. This the witness undertook to do and finding, upon consulting the telephone directory, that the appellant's call was Easton 3000, called that number and received a reply, and he asked to speak to Mr. Beatty, superintendent of the gas works, and in compliance with that request he spoke to somebody. The trial judge excluded all later and further testimony as to whom the witness asked to talk to and as to who such person with whom he talked said or represented he was. The court, however, did permit the witness to say what he communicated to such unidentified person but, as already shown, excluded all testimony as to that person's reply.

As before indicated there was no denial by the appellant that such a telephone call was made or received, that the superintendent, Beatty, was not asked for or did not respond or did not in fact receive the message testified to.

We think there was no error in admitting this proof.

Turning our attention to the alleged error in the trial court's charge we think, measured by the rule already referred to, there was no error so far as our attention has been specifically called thereto.

Appellant urges that the trial judge was in error because,

"he seemed to feel that in cases such as the present one, it is sufficient for purposes of giving the notice required to consult a telephone directory, call the number thus obtained and give the message to any person who answers the phone regardless of his position, regardless of his authority to accept such message and regardless of whether or not the person is recognized or identified by the caller."

It may be that a critical analysis of the instruction may show this complaint to be justified and that it is, as appellant urges, "a radical and unwarranted departure from the settled policy of our state * * *." The instruction was evidently taken *verbatim* from *Ratomski* v. *Quittner,* 214 *App. Div.* 186; 212 *N. Y. Supp.* 53.

This, however, we conclude, we are not called to pass upon in this case.

*Pamph. L.* 1912, *p.* 382, "A supplement to an act entitled, 'An act to regulate the practice of courts of law (Revision of 1903),'" section 27, provides:

"No judgment shall be reversed, or new trial granted, on the ground of misdirection, or the improper admission or exclusion of evidence, or for error as to matter of pleading or procedure, unless, after examination of the whole case, it shall appear that the error injuriously affected the substantial rights of the party."

Considering the alleged error from this viewpoint we cannot say that the substantial rights of the appellant were injuriously affected, for the reason, that the proofs in the case are replete and overwhelming that the appellant had both direct and constructive notice of leakage of gas from its mains into the manhole in question, and, for that matter, into others, and there is nothing showing that it did anything to remedy the condition before the happening complained of.

Under such circumstances it is impossible for us to understand how the jury could have been misled or any substantial rights of the appellant could have been injuriously affected by the instruction in question, assuming but not finding, that it was erroneous.

We reach the conclusion that the judgment under review must be affirmed, with costs.

536

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.