GEORGE W. LOFT REALTY COMPANY, PLAINTIFF-RESPONDENT, v. M. H. HARRIS, INCORPORATED, DEFENDANT-APPELLANT.

Argued May 15, 1934—Decided September 27, 1934.

For the respondent, *McCarter & English* (*Ward H. Herbert,* of counsel).

For the appellant, *Saul J. Zucker.*

The opinion of the court was delivered by

PERSKIE, J. On May 23d, 1925, the Prudential Insurance Company of America leased to Gerge W. Loft all of the premises located at the northwest corner of Broad and Market streets, Newark, New Jersey, for a term of fifteen years, at a yearly rental starting at $450,000 and increasing during the term to $550,000 and $650,000 a year. Loft deposited with the Prudential Insurance Company securities aggregating about $250,000 in value to secure his performance of the conditions of the lease and for the payment of the rent therein reserved. Later, on December 7th, 1925, Loft, with the written consent of Prudential Insurance Company, assigned the lease to the George W. Loft Realty Company, a corporation of New Jersey; and the said Loft, on the same day and in writing, further guaranteed the performance of the conditions of the lease and the payment of the rent therein reserved by the George W. Loft Realty Company.

The George W. Loft Realty Company was a holding company. It, in turn, sublet various portions of the premises to other tenants. And so, on March 26th, 1926, it rented part of the said premises to appellant for the period of fifteen years. In addition to the rent reserved the lease provided:

"First: The lessee covenants and agrees: (3) 'To pay the lessor five per cent. of the increase in the amount of real estate taxes for land and building against the entire land and building of which the premises are a part, over and above the amount of taxes as they may be assessed in 1925 for taxes for the year 1926, which taxes may be paid, assessed or imposed upon the said property in any or every year during the period of this lease, such payments of increase of tax to be made

by the lessee to the lessor at or before the times when said taxes shall become due and payable. A tax bill shall be sufficient evidence of the amount of tax and for calculation of the amount to be paid by the lessee.'"

Thereafter, on January 5th, 1931, under circumstances which shall be more fully hereinafter detailed, a tri-party agreement (*Exhibit D-2*) was made and executed between George W. Loft Realty Company (party of the first part, and for the sake of brevity shall be referred to as Loft Realty Company); George W. Loft, party of the second part, and the Prudential Insurance Company of America (party of the third part, which for the sake of brevity shall be referred to as Prudential), wherein the various agreements of the respective parties were referred to and in which it was agreed between the parties that for the sum of $100,000 paid to the Prudential, the parties of the first and second part thereunder did "* * * bargain, sell, assign, transfer and set over unto * * * Prudential * * * as of *January 1st, 1931, all * * * leases * * * annexed, marked, Schedule 'A' * * * ."* This schedule contained a list of all leases of all subtenants, including that of appellant. And said agreement also provided: "* * * and the said parties of the first and second parts do hereby covenant and agree to and with the said party of the third part that, *as of the first day of January, 1931,* all of the rents, claims and demands due and accrued or to become due and to accrue are as set forth in the said schedule * * * ."* But this schedule does not, however, set out any back or accrued rent as being due and owing by appellant. And the said agreement further provided: "And the said parties of the first and second parts in consideration of the premises have severally, *as of the first day of January, 1931,* surrendered and yielded up and by these presents do surrender and yield up unto the said party of the third part the said Indenture of Lease bearing date the twenty-third day of May, 1925, made by the Prudential Insurance Company of America, to the said George W. Loft, * * * ."* Prudential accepted the assignment and surrendered *as of January 1st, 1931,* and "* * * releases * * * *as of the*

*first day of January, 1931,* the said parties of the first and second parts from all liability thereafter accruing by reason of the said Indenture of Lease." The Prudential released the party of the second part from any and all liability under his several agreements with it and returned the securities deposited with it.

Respondent in the present suit sought to recover from appellant, under paragraph No. 3 of the lease aforesaid, a sum equal to the five per cent. increase of the taxes for the year 1930, over and above the year 1926. The appellant answered. It set up, as it now concedes, substantially two defenses: "First, that respondent [as assignor for its own use and benefit] could not maintain the action because it had parted with whatever interest it had in the aforesaid lease. Second, that respondent has agreed to forego its claim, if any it had, in consideration of appellant's assistance in obtaining the termination of respondent's liability under the paramount lease, or a repayment of a part of the security from Prudential."

The legal efficacy of the first contention was challenged and the truth of the fact set out in the second contention was stoutly denied.

The proofs on the factual issues were in substance as follows: For appellant, Mr. Harris, its president, testified that by reason of the economic depression he and all the other tenants desired to effect a reduction in rents. Meetings to that end were held by all tenants and he was selected as their spokesman. Harris called on Mr. Loft, president of the respondent company, and submitted the request of the tenants. He was told that Loft was willing to co-operate but could only grant such relief to the tenants as he, in turn, received from Prudential; that, perhaps, it would be best if tenants took the matter up direct with Prudential. Before so doing, and this is the crux of the case, Harris said that, and this without the knowledge of the other tenants, it was agreed between Loft and himself that in consideration of his (Harris) efforts in bringing about either (a) a surrender of the paramount lease; or (b) a reduction in the rental; or (c) a return to respondent of a portion of the $250,000 of negotiable securi-

ties deposited as security under the paramount lease, Loft agreed to waive the charge for taxes involved in the suit. Loft denied that there was any such arrangement or that he ever discussed the item of taxes with Mr. Harris. His insistment being that Harris and the other tenants merely sought a reduction of rent and that he advised them that he could only grant such a reduction as he in turn received from Prudential. As a result of negotiations started with Prudential to obtain a reduction of rent reserved Loft finally arranged with Mr. Duffield, its president, to buy, and did buy, his peace for $100,000 as set out in the agreement of January 5th, 1931.

The factual issue thus presented by the sharp divergence of the testimony by Harris and Loft, were submitted to the jury. We think properly so. The jury found for the respondent.

Appellant appeals from the judgment based on that verdict, and in support thereof, urges the following grounds: (1) The trial court erred in refusing to admit into evidence *Exhibit D-1* for identification, being the written agreement dated April 10th, 1931, whereby George W. Loft Realty Company of New Jersey and George W. Loft assigned and transferred all of its right and claim against M. H. Harris, Incorporated, arising out of its lease which was the subject-matter of the present suit, to the Prudential Life Insurance Company of America; (2) the refusal of the trial court to direct a verdict in favor of appellant at the close of the entire case was error; (3) the trial court erred in charging the jury that its "burden of proof is adequately discharged when a *prima facie* case is made out."

*Exhibit D-1,* dated April 10th, 1931, was an agreement between the same parties and related to the same subject-matter as was the agreement under date of January 5th, 1931 (*Exhibit D-2*). Appellant frankly, and properly so, says: "For all intents and purposes, *Exhibit D-1* is not different from *Exhibit D-2*. *D-2* was admitted in evidence and was more detailed. It is quite obvious, therefore, that no substantial rights of appellant were injuriously affected by its exclusion."

Assuming, but not deciding so, that there was a proper exception to the court's refusal to direct a verdict, we are of the opinion that it is without merit. A reading of *Exhibit D-2* made as it was after January 1st, 1931, clearly demonstrates that the parties fully intended that the respective rights of Prudential should begin and the liability of Loft should end as of *January 1st, 1931.* Moreover, *Exhibit D-8* is very persuasive. It is a supplemental agreement between Prudential and appellant, dated January 28th, 1931, and in it there is to be found, *inter alia,* the following:

"Whereas, the George W. Loft Realty Company, by indenture dated January 5th, 1931, has assigned, transferred and set over to the Prudential Insurance Company of America, party of the first part herein, *as of January 1st, 1931,* all of its right, title, interest and estate as Lessor in the said Indenture of Lease dated March 18th, 1926, * * *," and it was agreed therein between the parties:

"(1) The rental for the demised premises is reduced *as of January 1st, 1931,* from the sum of $36,500 per year to the sum of $29,200 per year * * *."

This agreement tends to further indicate that Prudential as well as appellant, recognized and treated with each other as of January 1st, 1931. There is not a word in this agreement about any back or accrued tax assessments being due to the Prudential from appellant. We are not impressed with the suggestion that appellant, under the agreement of January 5th, 1931, would be liable to Prudential for the amount recovered in this suit by respondent. The record fails to disclose any claim made by Prudential for this item. It knew of the present litigation. Its vice-president, Mr. Hamilton, testified in the case. Under these circumstances, it is not very likely that Prudential would sue appellant on the same claim.

Moreover, we are of the opinion that the assignment of January 5th, 1931, did not carry with it the item of back or accrued tax for which suit was brought. The respondent undoubtedly had a right to it and in fact did, under the assignment, withhold it therefrom.

Where, as here, an assignee takes under an agreement as of a certain day, to wit, January 1st, 1931, and particularly so when the assignment is subsequent thereto, in the absence of a clearly expressed intention to the contrary, the assignee does not take any benefits thereunder, in the nature of rents, which became due prior to the day certain as of which the assignee took under the assignment. The agreement in the instant case contains no such expressed contrary intention. The action of the parties indicates no such intention. On the contrary, as already indicated, their conduct tends to confirm the conclusion reached that it was not, under *Exhibit D-2,* intended to divest the assignor (respondent) of the back or accrued rent in question.

The respondent fully possessed the necessary essentials of a party plaintiff. It has: (1) entity or existence; (2) legal capacity to sue; (3) remedial interest in that cause of action asserted. 47 *C. J.* 18, § 15.

And finally it is urged that the learned trial judge erred in that portion of the charge wherein he said that the "burden of proof is adequately discharged when a *prima facie* case is made out." The language is perhaps unfortunate. But when the charge complained of is viewed, as it should be, in connection with the rest of the charge; with issues raised by the pleadings and the evidence (*Lyon* v. *Fabricant,* 113 *N. J. L.* 62; 172 *Atl. Rep.* 567), it is free from error. A reading of the entire charge clearly discloses that the learned trial judge correctly stated the law with reference to the burden of proof as it related to the issues raised by the pleadings and the evidence produced by each of the parties in support thereof. Moreover, if the portion of the charge complained of is viewed in the light indicated it is clear what the jury must have understood was that the plaintiff must prove a *prima facie* case under the lease and its burden of proof then discharged, the defendant then had the burden of proving the agreement of waiver pleaded by it in answer to plaintiff's claim. There was no denial of the sublease or of the money due, for extra taxes, thereunder. Therefore the learned trial judge might properly have said, as he

in substance did say, that under the pleadings and the evidence the plaintiff's case is established unless defendant proved a waiver as set up by it in answering plaintiff's claim.

No substantial rights of the appellant were injuriously affected by the charge.

Judgment is affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Parker, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.

*For reversal*—None.