20 N.J. Super. 296 (1952)
90 A.2d 23
JOHN GUZZI, PLAINTIFF-RESPONDENT,
v.
JERSEY CENTRAL POWER AND LIGHT COMPANY, A BODY CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1952.
Decided June 26, 1952.
*298 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Robert H. Maida argued the cause for the plaintiff-respondent (Messrs. Parsons, Labrecque, Canzona & Coombs, attorneys).
Mr. Harry Lane, Jr., argued the cause for the defendant-appellant (Messrs. Autenrieth & Rochester, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
This appeal raises the issue of the liability of the defendant corporation, arising out of the destruction of the plaintiff's home, resulting from an explosion and fire from escaping gas emanating from a gas pipe line in the cellar when a meter stop-cock broke in the plaintiff's attempt *299 to turn it to the "on" position. A jury returned a verdict in favor of the plaintiff in the sum of $16,000 damages and costs and the defendant appeals from the ensuing judgment.
On October 2, 1950, prior to the departure of the plaintiff and his wife from their home, 1002 Broadway, Long Branch, New Jersey, for a brief visit to Atlantic City, plaintiff, for the purpose of shutting off the flow of gas into his home, turned off a valve known as a meter "stop-cock." Upon his return on October 6, 1950, at approximately 4:25 P.M., he entered the cellar and with the aid of a wrench, proceeded to turn the stop-cock to the "on" position. In doing so, the stop-cock was broken, permitting the uncontrolled gas to flow into the house. Guzzi attempted to stop the flow of gas by stuffing rags into the opening. Failing therein, he called to his wife to notify the defendant company of the situation, whereupon, according to her testimony, she immediately telephoned the defendant company and advised them of the matter; that thereafter she became excited and ran to the second floor of the house and opened the windows. Mr. Guzzi came up from the cellar and failing to see his wife and not knowing whether she had made the call, thereupon telephoned the defendant company, advising them of the situation and requesting immediate aid. Thereafter, plaintiff and his wife left the house. Approximately 20 minutes later, before defendant's emergency crews arrived, an explosion occurred followed by a fire which virtually destroyed the plaintiff's premises.
Plaintiff instituted suit against the defendant for the recovery of damages based upon two counts, i.e., that the defendant utility company improperly installed and maintained its gas distribution system to plaintiff's home and secondly, that upon being notified of the emergency situation, defendant failed to respond and take the necessary steps to correct the situation for an unreasonable period of time, and by reason thereof the gas escaped into and filled their home, was ignited and exploded to plaintiff's injury and damage.
*300 The defendant unsuccessfully moved for a dismissal of the action at the end of the plaintiff's case and for a directed verdict at the end of the entire case. The defendant's appeal is based upon the alleged erroneous rulings of the court in denying its motions for dismissal and the erroneous charge of the court to the jury.
The defendant argues that the trial court erred in denying its motion to dismiss the first count of the complaint in that there was no proof that defendant's installation deviated from the established standard and no proof that the breaking occurred through any failure on defendant's part in installation or maintenance which was the proximate cause of the explosion; that defendant's failure to respond within the 20 minute interval between the time the first notice of emergency was given and the time of the explosion, presented no evidence of actionable negligence proximately causal to this occurrence and that, therefore, defendant's motion for dismissal as to the second count should have been granted by the trial court; that the plaintiff, by his own acts, exposed himself to dangers which were well recognized as hazardous or readily discoverable and that his contributory negligence and assumption of risk were established conclusively as a matter of law, and that, therefore, he is precluded from complaining of injuries which resulted to him; that the trial court committed harmful error in its charge to the jury regarding the absence of a locking device on the meter stop-cock, thereby casting absolute liability upon the defendant.
Where a motion for a dismissal is made at the end of the plaintiff's case and denied and renewed at the end of the entire case, the only question that will be considered on appeal is the latter motion. We may not weigh the evidence, but must accept as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom. In Visaggi v. Frank's Bar and Grill, Inc., 4 N.J. 93, 98 (1950), it was said:
*301 "Suffice it to say the rule is well settled that upon motions for dismissal, the equivalent of motions for non-suit or directed verdict under the former practice, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. Andre v. Mertens, 88 N.J.L. 626 (E. & A. 1915); Boyle v. Baldowski, [117 N.J.L. 320] supra."
Cf. Tedeschi v. Silver Rod-Paterson, Inc., 15 N.J. Super. 322, 326 (App. Div. 1951); Andre v. Mertens, 88 N.J.L. 626 (E. & A. 1916); Skiba v. Hmieleski, 106 N.J.L. 597 (E. & A. 1930); Maudsley v. Richardson & Boynton Co., 101 N.J.L. 561 (E. & A. 1925); Lipschitz v. N.Y. and N.J. Produce Corp., 111 N.J.L. 392 (E. & A. 1933).
Plaintiff's expert witness, Albert E. Forstall, testified that he examined the premises on November 29, 1950, and on December 27, 1950; that it was his conclusion that the gas filled the house from the broken pipe in the basement until it reached proper concentration and was ignited by a spark from the relay switch on the refrigerator located in the kitchen; that from his inspection of the broken meter cock he concluded the same to be of sub-standard construction and not the type used by well-regulated utility companies; that the shell of the stop-cock had thin walls of uneven thickness in its circumference; that it was not strong enough for the purpose for which it was used and that over a period of years, meter cocks have a tendency to stick. Through this witness, the plaintiff offered another meter cock of similar design, but of heavier construction, which he recommended as the preferable type to be used in the installation in question.
Ray L. Cooley, superintendent of gas construction for defendant, was called as a witness for the plaintiff. He testified that he had been employed by the defendant company since 1926 and that he was transferred to the shore area in 1931; that his company had no records indicating the service from the street main to the consumer's home; that no records showed the location or existence of a curb stop-cock at those premises. Plaintiff points out that neither before nor after *302 the explosion were defendant's employees able to locate a curb stop-cock in the service from the street main to his premises. Cooley testified that in this shore area it was the practice to install curb stop-cocks in medium pressure service from the main to the residence.
The record reveals that curb stop-cocks are installed for the purpose of stopping the flow of gas at the curb; that a one-quarter turn is all that is required to turn it off and plaintiff contends that if their premises had been equipped with a curb stop-cock, the emergency crew could have readily and easily stopped the flow of gas into the house without having to dig up the property until they found the lateral pipe and then cut the pipe and attach a plug to the severed end of the pipe as was done in this case. It is contended that the former is the preferred method of equipping a consumer service line for emergency matters. Plaintiff's expert testified that if the service had been properly equipped as a medium pressure line the lateral pipe would have been equipped with a curb stop-cock. The defendant contends that there was no proof of any standard practice in its industry for the installation of curb stop-cocks. The question whether the defendant's installation and maintenance of the gas supply to plaintiff's home, particularly with reference to the meter stop-cock, conformed to the standard practice in the industry was sharply controverted. Therefore, it properly became a question for the jury's consideration. Hoyt v. Public Service Electric & Gas Co., 117 N.J.L. 106 (E. & A. 1936).
The defendant produced Mr. L. Martin Harris, an expert from the Public Service Electric and Gas Company, who testified that the meter stop-cock used by the defendant company was recognized as standard for that use and that it was the type that was in general use by utility companies; that "They don't require any maintenance. At times they are inspected"; and that "We inspect the meter cock, we operate the meter cock every six years, when the meter is changed for periodic change." Defendant contends that the broken stop-cock bore "shiny" cuts or scratches which were indicative of the application *303 of great force when the plaintiff used the wrench in turning the meter cock "on," and that the extreme force so applied caused the meter cock to break. Plaintiff, however, denied making the marks on the meter cock and denied the use of extraordinary force in turning the meter cock. He asserts that it turned easily and that mere ordinary pressure was used.
We note an absence of proof by the defendant concerning periodic inspection of the installation and equipment since its original service installation was made to the plaintiff's premises in 1928, and no proof as to the condition of the installation in 1946, the date plaintiff became owner of the premises in question. Neither the date on which the cuts or scratches were made on the meter stop-cock nor the identity of the person who made them was definitely established.
The defendant asserts that on cross-examination, plaintiff's expert, Forstall, neutralized the effect of his testimony in that he admitted he knew of no standard that governed the installation of gas service equipment; that the size of the service laterals was more frequently governed by the cost of installation than by pressures and service demands; that other well-regulated utility companies might well have used meter cocks similar to that employed by the defendant company to which objection was made and that an outside valve or curb stop-cock is not required by the national board of fire underwriters, but is the requirement of some municipalities.
It is generally recognized by our courts that the trier of facts shall determine the weight and the value to be accorded expert testimony. Farrell v. N.J. Power and Light Co., 111 N.J.L. 526 (E. & A. 1933); Robbins v. Thies, 117 N.J.L. 389 (E. & A. 1937).
As to the second count of plaintiff's complaint, alleging unreasonable delay, at approximately 4:30 P.M., Mrs. Guzzi telephoned the defendant notifying its employee of the gas leak and need for emergency aid. The time of the explosion was established by several independent witnesses to be about 5:00 P.M. and that the first employee from the defendant *304 company arrived on the scene at approximately 5:30 P.M.; that he did nothing to alleviate the condition; that at approximately 5:40 or 5:45 P.M., a second emergency crew arrived and began excavating an area in search of the curb stop-cock. This work consumed approximately one-half hour. Thereafter, the crew excavated an area near the foundation of plaintiff's house, cut the lateral pipe and thus shut off the gas flow to the house. The fire was extinguished at approximately 6:50 P.M.
Paul Chadwick, superintendent of the customer service department for the defendant was called as a witness by the plaintiff. It was his job to receive emergency calls from customers and to dispatch emergency crews by means of a two-way radio system to answer the calls. He testified that on the day in question there were four emergency trucks on duty and that they were engaged in repair work at various points throughout the area; that the company had two additional emergency repair crews that were unaccounted for. The plaintiff alleged that according to defendant's testimony and records, the work performed by the various crews was not of an emergency nature; that the crews failed to call in to report on 30-minute intervals as required by company rules; that when such an extreme emergency arose as in plaintiff's case, the company should have contacted its repairmen by telephoning the consumer's residence where repairs were being made. One of the emergency crews was five miles from plaintiff's premises and three-tenths of a mile from the dispatcher's office in Allenhurst. Another was 2.8 miles from the Guzzi home.
The defendant's dispatcher's log offered in evidence by plaintiff indicated that no call was made for emergency vehicles to respond to plaintiff's call until 5:02 1/2 P.M., and that no car responded until approximately 5:21 P.M. Plaintiff's expert, Forstall, testified that from his experience with gas utility companies, he considered a delay in excess of 35 minutes unreasonable in the absence of coincident emergency calls, and that he considered plaintiff's situation a very important *305 emergency which required extra efforts to contact emergency crews in the event the two-way radio system was not effective.
The defendant disputes plaintiff's allegation of unreasonable delay in responding to his emergency call. It points out that the company's records indicate that they received plaintiff's call at 4:52 P.M., and that the dispatcher sent out a call to emergency trucks via the two-way radio system at 5:02 P.M. and, therefore, contends that even if the call had reached one of its emergency crews, it would have been too late to prevent the explosion which was established to have occurred at approximately 5:00 P.M. The company, therefore, concludes that its delay was not unreasonable and was not a proximate cause of the plaintiff's injury. It is further asserted that its emergency crews were on other calls but responded within reasonable time to the plaintiff's call. The defendant calls attention to the testimony of the plaintiff's expert, Mr. Forstall, who conceded that a delay of 30 to 35 minutes in responding to an emergency call would not be unreasonable. However, for the purpose of defendant's motion, we must accept the testimony of the plaintiff that the telephone call to the company was made at 4:30 P.M. and that it was at least 5:30 P.M. before any emergency crew appeared at the scene. Clearly, therefore, the question as to whether there was unreasonable delay on the part of the defendant company in responding to the emergency call of the plaintiff and whether that delay was the proximate cause of the plaintiff's damages, was a jury question. Robbins v. Thies, supra.
Our review of the evidence, as will appear from the recital hereinabove, clearly establishes conflicting and contradictory testimony on the question of the liability of the defendant. We are of the opinion, therefore, that the trial court properly submitted the issue on both counts of the complaint to the jury for its determination.
As stated in Finnegan v. Goerke Co., 106 N.J.L. 59, 61 (E. & A. 1929):
*306 "In Bennett v. Busch, 75 N.J.L. 240, the Supreme Court held that where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. And in a conflict of testimony, when the facts found by the jury will sustain the verdict, the court will not set it aside, although in their opinion the jury might, upon the evidence, have found otherwise."
Cf. Lipschitz v. N.Y. & N.J. Produce Corp., supra; Schwartz v. Rothman, 1 N.J. 206 (1948); Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc., 3 N.J. 149 (1949); Tedeschi v. Silver Rod-Paterson, Inc., supra; Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415 (1951).
The defendant argues that since plaintiff, by his own acts in manipulating the meter stop-cock, exposed himself to known danger, his contributory negligence and assumption of risk were established as a matter of law and precluded him from recovery for injuries sustained. It has frequently been stated, and with good reason, that assumption of risk and contributory negligence are so closely allied that it is sometimes difficult to draw the line of distinction. Expressions are found to the effect that in a broad sense assumption of risk shades into contributory negligence, the difference being one of degree rather than kind. 39 C.J., sec. 883, p. 684; 56 C.J.S., Master and Servant, § 357. Mr. Justice Holmes, in the case of Schlemmer v. Buffalo, R. & P.R. Co., 205 U.S. 1, 27 S.Ct. 407, 409, 57 L.Ed. 681, stated:
"Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. He is held to assume the risk upon the same ground."
Cf. Morril v. Morril, 104 N.J.L. 557, 60 A.L.R. 102 (E. & A. 1928).
The defendant contends that the only inference that can be drawn from the plaintiff's conduct, based upon the *307 "shiny" marks appearing thereon and the breaking of the stop-cock, is that he used great force in attempting to turn on the flow of gas and his contributory negligence was such that precludes him from recovery. However, the defendant loses sight of the plaintiff's testimony that he did not make the "shiny" marks appearing on the stop-cock and that he did not use any force in turning on the stop-cock, but on the other hand, it turned easily. Nor was there any evidence from which the plaintiff had notice or knowledge of the alleged danger or defective condition of the stop-cock. In the case of Turck v. Kaywal Realty Co., 3 N.J. Super. 165 (App. Div. 1949), because of the testimony of the plaintiff himself that he knew of the difficulty in turning on the water faucet, he used force to accomplish that result when the handle broke and injured his hand. Under the testimony here, the questions of contributory negligence and assumption of risk were properly left to the jury.
"The question of contributory negligence is ordinarily for the jury. To justify a directed judgment on such ground as a matter of law, the contributory negligence of the plaintiff must appear clearly and conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men in the exercise of a fair and impartial judgment. In this posture of the evidence the rule is that where it is reasonably debatable as to whether or not the plaintiff exercised a degree of care commensurate with the risk of harm, the issue of contributory negligence is one for the triers of fact. Bacak v. Hogya, 4 N.J. 417, 426 (1950)." Mellon v. Pennsylvania-Reading Seashore Lines, supra, at p. 422.
We perceive no error in the trial court's actions in its rulings on the issues of contributory negligence and assumption of risk.
The defendant contends there is error in the trial court's comment regarding its seventh request to charge. The court stated:
"7. Neither the consumer nor any other person has the right to disturb or interfere with the meter or any appurtenances thereon which are the property of defendant.
I am going to qualify that, however. Where the defendant puts a stop cock, as in this case, in the plaintiff's property and does not *308 lock that stop cock, and as in this case it could be locked closed, that is, so no gas would flow into it, if they didn't want anyone in the premises to touch that or to move it they could just as easily have locked it open, so that it could be locked either way. As it stands now, under the evidence as I recall it, the stop cock could be locked or sealed open  sealed shut so that no gas could go into the meter or into the part of the house beyond the meter, beyond that stop cock. On the other hand, if they didn't want anybody else to touch that or to move that, the company could just as easily have had an arm on it or they could have locked it around the pipe or have had it in such shape that it could have been locked so that it would be open after the company opened it."
The comment objected to by the defendant was made by the court in connection with the first paragraph of the quoted language embraced in the defendant's seventh request to charge, and while it might well have been omitted, it was clearly not intended to be in the nature of a specific charge of a duty of the defendant to lock the meter stop-cock, but was in effect, merely an observation by the court of a means that might have been adopted by the defendant to avoid the situation that occurred here and when considered in light of the entire charge to the jury, the distinction between the comment and the specific charge becomes apparent. In considering the question of prejudicial error arising out of the trial court's charge to the jury, it is necessary to consider the comment complained of in light of the entire charge. Lyon v. Fabricant, 113 N.J.L. 62 (E. & A. 1934); Geo. W. Loft Realty Co. v. M.H. Harris, Inc., 113 N.J.L. 469 (E. & A. 1934); Evans v. Jersey Central Power, &c., Co., 119 N.J.L. 88 (E. & A. 1937).
"In construing a court's charge to the jury, certain cardinal principles have been laid down by our courts to guide a reviewing court in determining whether or not the charge, as delivered, contains reversible error. Among those principles are the following: The meaning of a charge is to be determined by a consideration of the charge as a whole and not from a consideration of isolated portions thereof severed from their context. Lyon v. Fabricant, 113 N.J.L. 62. The charge must present the law fairly and clearly, so that the jury cannot reasonably be thought to have been misled thereby. Simons v. Lee, 117 N.J.L. 370. The acid test is, would the jury be misled? Middleton v. Public Service Co-Ordinated Transport, *309 131 N.J.L. 322." Kauderer v. McAllister Coal Co., 132 N.J.L. 410, 412 (E. & A. 1945).
Cf. Fornberg v. N.Y. & N.J. Cleaners & Dyers, 2 N.J. Super. 143 (App. Div. 1949). We conclude that no harmful error was occasioned by the court's comments.
The judgment of the Monmouth County Court is affirmed.