36 N.J. Super. 255 (1955)
115 A.2d 629
JOHN GUZZI, PLAINTIFF-RESPONDENT,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1955.
Decided June 21, 1955.
*258 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Harry Lane, Jr., argued the cause for appellant (Messrs. Autenrieth & Rochester, attorneys; Mr. Joseph F. Autenrieth, of counsel).
Mr. Theodore D. Parsons argued the cause for respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys; Mr. Robert H. Maida, of counsel).
The opinion of the court was delivered by JAYNE, J.A.D.
The factual circumstances accompanying and surrounding the occurrence of the explosion of illuminating gas which demolished the residence of the plaintiff at 1002 Broadway in West Long Branch on the afternoon of October 6, 1950 are fully unfolded in previous decisions reported in 20 N.J. Super. 296 (App. Div. 1952), and in 12 N.J. 251 (1953). We are here concerned with features of the second trial which was likewise concluded by a jury verdict in favor of the plaintiff.
The answers to some of the points projected by the defendant in the present appeal appear to be implicit in the opinion rendered by the Supreme Court in the consideration of the former trial. In this appellate review of the succeeding trial, our attention primarily converges on the propriety of certain passages in the court's instructions to the jury.
In undertaking to resolve the liability of the defendant in a case of this class, it was of supreme importance that the jury should definitely comprehend the essential nature and measurement of the legal duty resting upon the defendant applicable to the controversial issues of the case.
The trial judge included the following requests to charge in his instructions to the jury. We supply the accentuation.
"4. Corporations manufacturing and distributing gas must make reasonable and prompt inspection of its appliances. The exercise of due care requires such reasonable and thorough inspection as will detect defects when occurring. The defendant has offered proof that it was the owner of the appliances. If you find that the defendant failed to exercise due care in the exercise of reasonable and *259 thorough inspection of its appliances and that failure proximately contributed to the explosion, then the defendant is liable.
5. It is the duty of the defendant, a corporation, to use reasonable care to maintain the appliances used for the transmission of gas in proper condition and this involves reasonable care in inspection for the discovery of possible impairment or defects."
The dimensions of the defendant's duty are distinctly expounded, for example, in the decision in Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 272 (E. & A. 1948). Some other decisions of relevancy are: Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890); Anderson v. Jersey City Electric Light Co., 63 N.J.L. 387 (Sup. Ct. 1899), affirmed 64 N.J.L. 664 (E. & A. 1900); Heyer v. Jersey Central Power, &c., Co., 106 N.J.L. 211 (E. & A. 1929); Adams v. Atlantic City Electric Co., 120 N.J.L. 357, 363 (E. & A. 1938).
Considered apart from application to any particular set of circumstances, the care which the defendant was obligated by law to exercise in such an undertaking was of that degree commensurate with the risks and dangers reasonably to be anticipated and foreseen in the use and maintenance of a highly destructive agency and a measure of care which comprehends a circumspection, and a prevision pursued with due regard to reasonably probable contingencies.
Words are the materials with which ideas and mental concepts are constructed. The instructions here impugned, if literally interpreted, imparted to the jury the conception of a duty obliging the defendant to make such punctual and thorough, that is, complete and consummate, inspections "as will detect" not only defects reasonably to be apprehended, but also all possible defects and impairments "when occurring." Such as the possible hammering of the stopcock by the plaintiff?
Superimposed upon this instruction was the court's declaration that "the exercise of due care requires" inspections of such efficiency. Normally it is the exclusive function of the jury to determine what the legally applicable degree of care as expressed by the court required the defendant *260 to do or refrain from doing in the factual setting which the jury resolves to have existed. It is within the province of the jury to measure the conduct of the defendant by the application of the principles of law relative in general to the controversial issues of the case. Thus it is ordinarily improper, for example, for the court specifically to inform the jury that reasonable care required the motorist to have sounded his horn, turned to the right or left, shut off the ignition of the motor, and such like specified courses of conduct. The likely consequence is that where it is evident that the defendant motorist omitted to do such a specified act, the court's instruction in any such instance becomes tantamount to our former direction of a verdict for the plaintiff. So here, it must be acknowledged that the defendant did not make inspections of such extreme thoroughness and effectiveness as those which the court informed the jury that due care required.
We observe that there was in the present case some evidence informative of the methods of inspections practiced in general by well-regulated gas companies and approved by experience. See Heyer v. Jersey Central Power, etc., Co., supra. It is manifest that the standard so represented by the experts differed materially from the exacting type adopted by the court.
The judge having so attached the necessity of the positively effective inspections to the requirement of reasonable care, it is not apparent that in the subsequent passages of the charge he extinguished the equation from the minds of the jurors. Cf. State v. Tapack, 78 N.J.L. 208, 211 (Sup. Ct. 1909); State v. Erie R.R. Co., 84 N.J.L. 661, 666 (E. & A. 1913); Collins v. Central R.R. Co., 90 N.J.L. 593 (E. & A. 1917); Pucci v. Weinstein, 8 N.J. Super. 247, 250 (App. Div. 1950); Marzotto v. Gay Garment Co., 11 N.J. Super. 368 (App. Div. 1951), affirmed 7 N.J. 116 (1951); King v. Patrylow, 15 N.J. Super. 429, 434 (App. Div. 1951); Trecartin v. Mahony-Troast Construction Co., 18 N.J. Super. 380, 390 (App. Div. 1952).
*261 Cases implicating basically the installation, use, maintenance, and operation of dangerous utilities such as electricity or gas are particularly within the class in which the information derived from the special knowledge and experience of qualified expert witnesses becomes instructive and serviceable to jurors ordinarily unacquainted with the commonly accepted installation and maintenance practices in such pursuits. Often such edifying information forms the cornerstone in the formulation of the verdict. Yet we discover in the court's charge to the jury the prescription that: "It (the expert testimony) is not to supplant or to supplement your own judgment."
The following quotation reveals the context of the sentence:
"* * * You are not bound, of course, by the opinions of experts any more than you are bound by any other factor which may be testified to in the case. The testimony of these expert witnesses should be given such weight as their skill, training, knowledge, and veracity entitle them to receive. The purpose of this expert testimony is to assist you in arriving at a just and correct verdict. It is not to supplant or to supplement your own judgment."
It may be acknowledged that the portion of the instruction that immediately precedes the concluding sentence is proper, and proper would it have been to close the instruction with the explanation to the jury that the purpose of the expert testimony was to enlighten their consideration of all of the evidence but not conclusively or necessarily to control their judgment. This is one of the relatively infrequent instances where the legal edifice was skillfully erected and immediately demolished by the overweight of its rhetorical addition.
Assuredly basic knowledge of the subject of inquiry must precede one's final judgment. Such knowledge thus becomes an indispensable constituent of an intelligent judgment, so desirable in the administration of justice. One of the central objects of expert testimony is to impart to the jurors supplemental knowledge beyond the range of their own, with which they become the better qualified to *262 understand the intrinsicalities of the facts and thereby enabled the better to extract from all of the evidence justifiable inferences.
Despite the somewhat notorious suspicions that such testimony is sometimes devoted to reprehensible uses in our courts, yet where delivered in sincerity and with integrity of purpose by a learned expert witness, it is quite frequently of exceptional value to both the judge and the jury. As Shakespeare said of the toad: it may be ugly, yet it wears a precious jewel in its head.
And so to inform the jurors in the present case that expert testimony, however credible and convincing, is neither to displace nor to supplement their own perhaps inappreciable or inaccurate knowledge in the formulation of their judgment was, in our opinion, erroneous.
Certainly the law does not attempt to restrict the degree of mental weight and influence which the juror may otherwise himself accord to expert testimony. In this respect the law draws no distinction between expert testimony and the testimony of other witnesses. 20 Am. Jur. 1059, § 1208; 3 Jones, Com. on Evidence (2d ed.), 2513, §§ 1373, 1375.
Indeed, we may venture to say that there are but few rules in our system of evidence which tend to prescribe for the jury the precise effect to be accorded any general or special class of evidence. Caution may be judicially directed to be employed in the consideration of certain classes of evidence, but in the final stage its probative influence is to be measured by the jury.
In examining the propriety of the deliverances of our trial judges we have no inclination to be captious. The author of the present opinion remarked in his dissent in Marzotto v. Gay Garment Co., 11 N.J. Super. 377, on p. 384 (App. Div. 1951):
"But in reviewing judicial action on appeal, the unity of pragmatical acceleration and academic precision may be recognized as a cherished ideal, but during the period of progression toward that visionary destination, the limitations of human capacities of circumspection should not be ignored."
*263 Mindful of the character of the controversial issues in the trial of the present action, the prejudicial effect of the passages of the court's charge relating to the defendant's duty and to the limited influence to be ascribed to the expert testimony becomes conspicuous. Timely and specific objections invited the attention of the trial judge to those portions of the charge.
While the expeditious termination of a litigation is highly desirable, the administration of justice is of predominant concern. The errors to which we have referred oblige us to reverse the judgment and direct another trial of the action.
This consequence induces us to comment briefly upon two additional points agitated by the appellant.
Surmounting the objection thereto interposed by counsel for the defendant, certain testimony of Alfred E. Forstall given by him on behalf of the plaintiff at the first trial and stenographically recorded, was read to the jury at the succeeding trial. This was occasioned by the death of the witness intermediate the first and second trials. He was permitted to testify at the former trial in the capacity of an expert witness.
In reviewing the testimony adduced at the first trial, the Supreme Court, by the pen of Mr. Justice Heher, expressed the following estimate of the worth of the testimony of the witness Forstall:
"* * * Here, the eventual concession made by the witness would seem to be a disavowal of the requisite testimonial expert qualifications, or, at the very least, an unsureness that militates against the trustworthiness of his opinion."
While we leave to the judge at the ensuing trial the determination of the admissibility or exclusion of all or portions of Forstall's previous testimony according to his judgment of its competence, we are disposed to supply an answer in this particular to the contention of counsel for the plaintiff. The insistence is that the statute (N.J.S. 2A:81-14) positively compels the court to admit the testimony of the deceased witness at the new trial because it *264 ordains that "his testimony so taken shall be admissible at a new trial of the action." (Emphasis ours)
We think none such unqualified mandatory import and meaning was legislatively intended to be ascribed to this section of the statute. It is hypothetically conceivable that it might in a given case be the erroneous admission of the testimony of that witness, since deceased, that caused the reversal of the judgment rendered therein. The reasonable intent of the statute is that if the testimony is competent, relevant, and in all other respects legally admissible at the new trial, it shall be received notwithstanding the circumstance that the death of the witness has intervened.
Our concluding comment relates to an occurrence during the deliberations of the jury without the contemporaneous knowledge of counsel for the defendant, although he was present in the courthouse awaiting the rendition of the verdict. The trial judge acting in his chambers was unaware of counsel's nearby attendance.
We quote from the record the explanation of the judge:
"The Court: At three o'clock the jury through the officer in attendance sent word to the Court that they would like to have Dr. Woldman's testimony sent in to them, and also requested that they be fed. I complied with the latter request and took their order or had the court officer take their order for sandwiches and coffee, and instructed them or sent word in that they would have to use their own recollection concerning Dr. Woldman's testimony."
Excluded from any impropriety is the message of the hungry jury transported by the attending officer to the judge that they desired some abdominal timber, but privy communications in the absence of counsel, particularly when oral, between a trial judge in chambers and a jury engaged in deliberations in the jury room concerning any matter implicated ever so remotely in the consideration and decision of the case are forbidden by the essentials of our trial procedure as imperiling, perhaps, the principles of due process. Leonard's of Plainfield, Inc. v. Dybas, 130 N.J.L. 135 (Sup. Ct. 1943). If the record fails to disclose whether or not the communication was prejudicial, *265 it will be presumed to be so and constitute cause for a reversal of the judgment. State v. Auld, 2 N.J. 426, 432 (1949); 53 Am. Jur. 649, § 904; see, Palestroni v. Jacobs, 10 N.J. Super. 266 (App. Div. 1950).
In the present instance we accept without hesitation the explanatory account of the highly scrupulous and conscientious trial judge, but the impropriety of the procedure is accentuated by the realization that neither he nor we know ad verbatim either what the jury or its spokesman said to the court attendant, or in what verbiage the officer conveyed to the jury his response.
Conceivably the jury may have imparted to the officer cogent and determinative reasons for requesting a recitation of the testimony which he omitted to express to the judge. Unintentionally may the officer in communicating the court's denial have by his language left with the jury the implication that the testimony was not of sufficient importance to be rehearsed. To indulge in communications of this fashion is precarious.
The judgment is reversed.