239 N.J. Super. 635 (1990)
571 A.2d 1367
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CECIL LAMARR BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1990.
Decided March 28, 1990.
*637 Before Judges SHEBELL, BAIME and KEEFE.
Clifford N. Kuhn, Jr., argued the cause for appellant (Rubin, Rubin, Malgran & Kuhn, attorneys; Clifford N. Kuhn, Jr. and Leslie Stolbof Sinemus, on the brief).
Janet Flanagan, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Janet Flanagan, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant Cecil Lamarr Brown appeals from his jury conviction for escape (N.J.S.A. 2C:29-5), a crime of the third degree. He was sentenced to two years probation with a $30 Violent Crimes Compensation Board penalty.
In this appeal defendant argues that his "motion for a judgment notwithstanding the verdict should have been granted as the elements of escape under N.J.S.A. 2C:29-5 were not proved." We have not been supplied with a transcript of any argument on the issue that may have occurred during the course of trial; however, it was agreed on the record at the time of the argument on the motion for judgment n.o.v. that the issue was raised and "the court decided it at the end of the State's case...." In any event, R. 3:18-2 permits a motion for judgment of acquittal after a jury verdict of guilty even if a motion is not made earlier pursuant to R. 3:18-1. The gist of defendant's argument on appeal is that "he was not subject to *638 official detention at the time he escaped and thus his conduct did not fall within the purview of the escape statute."
There is little factual dispute. On September 11, 1987, at about 7:30 p.m., a uniformed New Jersey state trooper, while patrolling the New Jersey Turnpike, came upon a motor vehicle parked on the right shoulder of an access ramp to the southbound lanes at Interchange 14. He pulled behind the stopped vehicle and activated the police vehicle's overhead lights. He then approached the passenger side of the vehicle and observed three occupants. A woman was behind the wheel, defendant was in the right passenger seat and another man appeared to be sleeping in the back seat.
The trooper inquired of the driver as to whether there was a problem with the vehicle but received no response. He noted that she stared straight ahead and clenched the steering wheel so tightly that her knuckles appeared white. He repeated the question at which time the defendant answered that he had been driving the automobile, but had gotten tired and therefore switched places with the woman found behind the wheel. The trooper asserted that he asked both occupants of the front seats to produce their credentials. As the woman looked through her pocketbook, the trooper observed a marijuana cigarette fall from her wallet and come to rest in the hinge portion of the pocketbook. He ordered her to hand him the pocketbook at which time he found two more marijuana cigarettes. All three occupants of the vehicle denied to the trooper that the marijuana cigarettes were theirs. Defendant testified that no cigarette fell from the woman's wallet. He claimed that the trooper grabbed the handbag, searched it and discovered the first marijuana cigarette inside.
The trooper ordered all three occupants to place their palms on the ceiling of the car's interior and returned to his patrol car to radio his position and request backup. The trooper left the purse in the patrol car and returned to the vehicle where he ordered all of the occupants out of the vehicle. The trooper *639 then patted down each defendant for weapons and ordered them to sit on the front hood of their vehicle telling them "you're in enough trouble as it is. Don't move." Defendant denied being told not to move.
The trooper reached into the vehicle under the right front passenger seat and retrieved a brown, paper bag in which he found a loaded .22 caliber revolver together with 250 glassine envelopes containing heroin. Upon making this discovery, the trooper became aware that the two male defendants had gotten off the hood of the car and were running away. The trooper attempted to pursue the fleeing defendants but noted that the woman then began making her way towards the driver's side of the vehicle. He immediately returned, handcuffed her and placed her in the back of his patrol car and again radioed for assistance. A search was begun for the two males and in approximately one hour both were found. It was defendant's position at trial that he did not understand that he was under arrest and ran only because of a panic reaction as he saw the trooper get out of the vehicle holding handcuffs following the search. The trooper testified that after having found the marijuana cigarettes he acted with the intention to arrest all three occupants.
In this appeal defendant has not challenged the trial court's instruction to the jury on the escape charge. Indeed the charge was most favorable to him. During the course of deliberations the jury sent the court the following request: "[n]eed a definition of lawful custody and control." The judge responded noting that he was giving the jury "something a little bit more than what I gave you." In pertinent part the trial judge further instructed the jury as follows:
Now, by definition a person commits this crime if without lawful authority the person removes himself from official detention.
Now, in order for the State to obtain a conviction on this charge the State must prove each of the following elements beyond a reasonable doubt:
They are that the defendant or defendants were or was a subject of official detention.

*640 And that two, that the defendant or defendants removed themselves or himself from official detention.
And three, that the defendant or defendants acted without lawful authority and that they, the defendant or defendants acted knowingly.
All right.
Now, official detention. All that basically means arrest or can also mean confinement in an institution on a charge or conviction.
But however, here the State's allegations in this particular case that you're concerned with is that the defendant or defendants either were or was under arrest. You don't have to be concerned about confinement in an institution on the charge.
Now, an arrest. Well, that does not require formally spoken words or that the person be handcuffed. But it does require restraint of the person and restriction of liberty of movement.
Therefore an individual fleeing from an officer would not be guilty of an escape unless the individual had first had his liberty of movement restrained by that officer.
Now, a person under arrest must know that he is being detained. That is that he is in the custody of a officer and that he is therefore not free to leave even if he wishes to do so.
Now, to remove oneself from official detention. As referred to, official detention is to engage in conduct which results in the individual gaining freedom from custody. Without lawful authority means without the legal right to engage in such conduct.
Knowingly. That's the other  last element and that means a person acts knowingly with respect to the nature of his conduct or the attendant circumstances if that person is aware that his conduct is of that nature or that such circumstances exist or the person is aware of a high probability of their existence.
A person acts knowingly with respect to a result of his conduct if the person is aware that it is practically certain that his conduct will cause such a result.
Therefore the elements for conviction or for you to find a conviction of the crime of the escape would require proof beyond a reasonable doubt that one, the defendant or defendants either was or were under arrest.
Two, that the defendant or defendants engaged in conduct which resulted in his removal or own removal from custody.
And three, that the defendant had no legal right to do so.
And that the defendant acted knowingly. That's the fourth element; is that clear? So you got those four elements.
Now, let me add this which I did not add earlier to see whether or not this will help you with regard to the lawful custody and control question that we have here.
In a case such as the one that you have, where the defendant is accused of escaping from the custody of an officer following an arrest, legal irregularity in bringing about or maintaining detention or lack of jurisdiction of the committing or detaining authority, and here we're speaking about the Trooper, that is *641 a defense, but only if the escape involved no substantial risk of harm to the person or property of anyone other than the defendant or defendants.
In other words, even where the officer has not followed proper procedures or has acted unlawfully or improperly in making an arrest, still there is no defense unless the defendant acts in a manner that will involve no substantial risk of harm to the person or property of anyone else.
Therefore, simply put, the law provides that an escape from an illegal arrest is not criminal where it involves no substantial risk of harm to another or even if it involves a substantial risk of harm to another, where there is a clear case of abusive arrest by an officer who knows there is no basis for the arrest.
So therefore, it would also be for you to determine whether or not there has been a legal irregularity by the officer providing a defense to escape under the law as I have just defined it for you.
The burden of proof is on the State to disprove the defense once it has been raised and the standard proof is, as always beyond a reasonable doubt.
Therefore, if you find that the State has failed to prove any one or more of the elements of the crime of escape beyond a reasonable doubt or if you find that the State has failed to disprove the defense of legal irregularity beyond a reasonable doubt then your verdict should be not guilty and you should deliberate no further.
On the other hand if you find that the State has proven all of the elements of the crime of escape beyond a reasonable doubt, then your verdict should be guilty.
N.J.S.A. 2C:29-5a, entitled "Escape," provides as follows:
A person commits an offense if he without lawful authority removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. "Official detention" means arrest, detention in any facility for custody of persons under charge or conviction of a crime or offense, or committed pursuant to chapter 4 of this Title, or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but "official detention" does not include supervision of probation or parole, or constraint incidental to release on bail. [Emphasis supplied]
N.J.S.A. 2C:29-5c, entitled "Effect of legal irregularity in detention," states:
Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section if the escape is from a prison or other custodial facility or from detention pursuant to commitment by official proceedings. In the case of other detentions, irregularity or lack of jurisdiction shall be a defense only if:
(1) The escape involved no substantial risk of harm to the person or property of anyone other than the detainee; or
(2) The detaining authority did not act in good faith under color of law.
*642 When a motion to acquit notwithstanding a jury verdict of guilty is made pursuant to R. 3:18-2, the standard is the same as that to be applied under R. 3:18-1 (motion before submission to jury). State v. Kluber, 130 N.J. Super. 336, 341-42, 327 A.2d 232 (App.Div. 1974), certif. den., 67 N.J. 72, 335 A.2d 25 (1975). The test established in State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967), is that when a motion for acquittal is made under R. 3:18-1, the trial judge must deny the motion if "viewing the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt beyond a reasonable doubt." It is incumbent upon this court to apply the same standard as the trial court when deciding if the trial court should have granted the motion for acquittal. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964).
Regardless of whether the State has the burden of proving an arrest, or whether mere detention for purposes of police investigation alone is sufficient for there to be culpability under N.J.S.A. 2C:29-5, it must be shown that a defendant had knowledge that he was removing himself from official detention. See N.J.S.A. 2C:2-2c(3). In this regard, the jury was specifically instructed that it must find that the defendant acted knowingly. The trial judge explained that this meant that "a person under arrest must know that he is being detained ... [and] is in the custody of an officer and is therefore not free to leave even if he wishes to do so."
It was the position of the prosecutor at trial that the jury instruction, in referring to the definition of official detention under N.J.S.A. 2C:29-5, should have included the broad catchall provision "any other detention for law enforcement purposes." Similarly, the State argues on appeal that escape from an officer's custodial detention, even if that detention is less than an arrest, is included as an offense within the Legislature's intent in enacting N.J.S.A. 2C:29-5a. This the State asserts is evidenced by the use of the clear statutory language "or any *643 other official detention for law enforcement purposes." See N.J.S.A. 2C:29-5a.
According to defendant's argument, even if defendant knowingly removed himself from official detention, it would not constitute escape in these circumstances because he "had committed no crime under which the officer could have actually made an arrest[]" and the detention by the officer was not covered by the statutory language "any other detention for law enforcement purposes." See N.J.S.A. 2C:29-5a.
Defendant correctly asserts that "we must look to the source of N.J.S.A. 2C:29-5, which is the Model Penal Code section 242.6" to determine the meaning of the phrase "or any other detention for law enforcement purposes." The following paragraph of the American Law Institute Commentaries to the Model Penal Code makes it perfectly clear that the phrase is meant to broaden the scope of the escape statute to include court-ordered detentions and sentences but not pre-arrest detention by police officers. The applicable portion of the comment to section 242.6 reads as follows:
Section 242.6(1) contains a definition of the "official detention" from which escape will be punished. The definition includes "arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes." It seems plain that the offense of escape should be extended to delinquency, extradition, and deportation proceedings and that the process from arrest through conviction and service of an institutional sentence should be included. The phrase "any other detention for law enforcement purposes" is meant to take account of the diversity of institutional facilities employed in modern penology. The definition specifically excludes, however, "supervision of probation or parole, or constraint incidental to release on bail." Bail jumping is separately treated in Section 242.8, while conditional release on probation or parole carries its own sanctions. [Model Penal Code § 242.6 comment 3 at 264 (Official Draft and Revised Comments 1962) (1980 ed.); emphasis supplied].
Nonetheless, defendant's contention that he was entitled to a judgment of acquittal must fail. It was not incumbent upon the trial judge to determine whether or not the arrest was based on sufficient probable cause. Rather, it was for the jury to determine whether defendant was placed under arrest by the *644 detaining officer and whether the officer acted "in good faith under color of law" in arresting defendant. See N.J.S.A. 2C:29-5c; see also Guzzi v. Jersey Central Power & Light Co., 36 N.J. Super. 255, 260, 115 A.2d 629 (App.Div.), certif. den., 19 N.J. 339, 117 A.2d 52 (1955) (it is the province of the jury to measure defendant's conduct by application of principles of law relative to the issues of the case). This conclusion is compelled by N.J.S.A. 2C:29-5c which permits the defense of irregularity or lack of jurisdiction where the escape is not from a custodial facility or pursuant to a commitment by official proceedings, provided the escape involved no substantial risk of harm to the person or property of anyone other than the detainee.
Even where such risk is involved, it is a defense to escape that the detaining authority did not act in good faith under color of law. See N.J.S.A. 2C:29-5c(2). Thus, where there is evidence of substantial risk of harm to the person or property of one other than the arrestee, the crime of escape is implicated unless the arrest was made in bad faith, without color of law. Here, defendant relied on the defenses in N.J.S.A. 2C:29-5c(1) and (2). Thus, the questions of whether there was an arrest and whether such arrest was made in good faith under color of law were proper questions for the jury as part of their consideration of defendant's defenses. Guzzi, 36 N.J. Super. at 260, 115 A.2d 629.
It is not contended that there was insufficient evidence of an arrest or of defendant's acting knowingly. We find that there was sufficient evidence, considering the circumstances and location of defendant's attempt to escape in proximity to a busy highway, for a jury to find that there was substantial risk of harm to persons or property other than defendant. In addition, it is beyond dispute that the jury was entitled on these facts to find that the arresting officer was acting in good faith under color of law. Thus, all elements of escape could reasonably have been found. Reyes, 50 N.J. at 458-59, 236 A.2d 385.
*645 So long as a jury could find against defendant on the ground that an arrest was made in good faith under color of law, any irregularity or lack of probable cause for the arrest would not be a defense if the jury found that, as it was entitled to on the evidence, there was a substantial risk of harm to the person and property of others. N.J.S.A. 2C:29-5c. The Model Penal Code Commentary notes that this provision "excepts from liability under this section even violent escape in clear instances of abusive arrest by officers who know that there is no basis for the arrest. Of course, this provision does not immunize the escaping arrestee from criminal penalties for the use of force." Model Penal Code § 242.6 comment 5 at 270 (Official Draft and Revised Comments 1962) (1980 ed.).
The trial judge specifically charged the jury as to the availability of the defense, and instructed the jury that "[t]he burden of proof is on the State to disprove the defense once it has been raised and that the standard [of] proof is, as always[,] beyond a reasonable doubt."
The judgment of conviction is affirmed.