816 A.2d 180

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. REGINALD MOULTRIE, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 11, 2002—Decided February 26, 2003.

548

Before Judges KESTIN, FALL and WEISSBARD.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Robert Seelenfreund,* Assistant Deputy Public Defender, of counsel and on the brief).

*Peter C. Harvey,* Acting Attorney General, attorney for respondent (*Johanna Barba,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WEISSBARD, J.A.D.

Defendant, Reginald Moultrie, was charged with third degree possession of heroin, *N.J.S.A.* 2C:35–10a(1) (count one); third degree possession of heroin with intent to distribute, *N.J.S.A.* 2C:35–5b(3) (count two); third degree possession of heroin with intent to distribute within 1,000 feet of school property, *N.J.S.A.* 2C:35–7 (count three); second degree possession of heroin with intent to distribute within 500 feet of a public housing facility, *N.J.S.A.* 2C:35–7.1 (count four); fourth degree aggravated assault against Officer D. Bartell, *N.J.S.A.* 2C:12–1b(5)(a) (count five); fourth degree aggravated assault against Officers Reginald Holloway and Vito D'Alessio, *N.J.S.A.* 2C:12–1b(5)(a) (count six); fourth degree criminal trespass, *N.J.S.A.* 2C:18–3 (count seven); third degree escape, *N.J.S.A.* 2C:29–5a (count eight); and third degree resisting arrest, *N.J.S.A.* 2C:29–2 (count nine) [1].

At defendant's jury trial, the seventh count of the indictment, charging criminal trespass, was dismissed by the court. The jury

---

[1] Kamila Davis was charged in the same indictment with fourth degree obstruction of justice, *N.J.S.A.* 2C:29–1 (count ten); fourth degree aggravated assault against Officers Ferrara and Moreno, *N.J.S.A.* 2C:12–1b(5)(a) (count eleven); and third degree resisting arrest, *N.J.S.A.* 2C:29–2 (count twelve).

acquitted him of all remaining charges except count eight, third degree escape. Upon his conviction, defendant was sentenced to a five-year prison term and appropriate penalties were also imposed.

Sometime during the late afternoon of June 14, 2000, defendant and his girlfriend, Kamila Davis, visited Ms. Davis's mother at her home in the housing projects on Grafton Avenue in Newark. That same day, in the same area, members of the Essex County Sheriff's Bureau of Narcotics and Drug Enforcement were acting undercover, in an unmarked gold minivan, for the purpose of apprehending drug dealers in the area.

Shortly after 7:45 p.m., Detective D'Alessio drove the unmarked minivan into the parking lot between 1905 and 1925 McCarter Highway. Upon seeing defendant standing on the corner, the officers pulled up to defendant, who approached the van and informed the undercover officers, "I got diesel." Detective Moreno recognized the term as the street name for heroin and replied with a number two hand signal. Defendant stepped closer to the van, reached into his pocket, and pulled out a bundle of glassine bags. Upon observing the heroin, the detectives showed their badges and said, "Police!" Simultaneously, the officers jumped from the van and pursued the fleeing defendant on foot.

Officer Holloway apprehended defendant from the first floor of 1925 Grafton Avenue. *Miranda*[2] warnings were administered and defendant was brought to the police vehicle to be monitored by Detective Bartell, while the rest of the area was searched. During the search, the officers recovered a bundle of seven glassine bags of heroin marked "G–Code" in green, which they alleged defendant discarded while running from them. Additionally, the officers found three more bundles of heroin with the same green markings on the first floor.

While the other officers searched the premises, defendant complained to Detective Bartell that his handcuffs were restricting his

---

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

blood flow. Detective Bartell unlocked the police vehicle and approached the passenger side door, intending to alleviate defendant's discomfort. At this time defendant kicked the door and knocked the officer to the ground. Still handcuffed, defendant "bolted from the vehicle." Detective Bartell immediately radioed the other officers and informed them of the escape.

Defendant fled into 1905 McCarter Highway. The officers chased him up to a second floor apartment owned by Aurora Rodriguez. Ms. Rodriguez informed Detective Holloway, via an eye signal, that defendant was hiding in the kitchen. As Holloway pulled back the curtain which closed off an area in the kitchen, defendant, who had been hiding in the closed section, lunged at the officer, despite still being handcuffed. A struggle ensued, which ultimately resulted in Detectives D'Alessio and Holloway reapprehending defendant.

At trial, defendant denied possessing, selling or discarding any drugs on June 14, 2000. He testified that upon leaving Davis's mother's home he spotted his friend, Ray Houston, with some people on the corner "hanging out." Upon joining the group, Houston informed defendant about a robbery which had recently occurred in the area, in which three armed men jumped from a gold car and robbed an individual known as Haus. Shortly after that conversation, defendant testified that the gold "van pulled up, [and] everything just start[ed] busting open, we all ran," believing that the people in the van were robbers. Defendant described his apprehension as follows:

> [T]he police caught me on the right side and they was like "We are officers." They didn't say 5-0, but they said "We [are] police officers." And I said, "Oh, Officer, I don't have nothing." So they grabbed me, threw me on the ground, when they threw me on the ground, they put the handcuffs on me. They put the handcuffs on me, picked me up, unbuckled my pants, went in there, searched my pockets, everything, just searching.

After his arrest, defendant was placed in a police vehicle. In his testimony, defendant admitted to opening the door, jumping out of the police car, and running into Rodriguez's apartment. Defendant claimed he fled the second time because he was on

probation and "already knew the consequence[s] if [he] ever [got] caught doing something [he] ain't got no business doing." Defendant denied any struggle with the officers, claiming he submitted to police custody inside the apartment and that the police struck him without cause both at the scene and at headquarters.

As support for his own testimony, defendant offered three witnesses: Raymond Houston, Aurora Rodriguez [3], and Kamila Davis [4]. Houston, in addition to confirming defendant's testimony that he had told defendant the story about the alleged robbery, also verified that on June 14, 2000 an unfamiliar gold van pulled into the parking lot and several men sprang from it without warning and without defendant approaching the van. Furthermore, Houston testified he did not see defendant dispose of anything while running from the police.

Based on the forgoing testimony, defendant was acquitted of all counts of the indictment except count eight, escape. This appeal followed.

On appeal, defendant raises a single argument: that the trial judge erred in refusing to charge "legal irregularity" as a defense to escape, thereby depriving him of a fair trial. We agree and therefore reverse defendant's conviction.

*N.J.S.A.* 2C:29–5a, in pertinent part, states that "[a] person commits an offense of escape if he without lawful authority removes himself from official detention . . . ."

Furthermore, subsection d of the statute provides:

Effect of legal irregularity of detention. *Irregularity in bringing about or maintaining detention,* or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section if the escape is

---

[3] Ms. Rodriguez admitted she told the police where to find defendant, but that defendant had permission to enter her apartment at any time.

[4] Ms. Davis testified to interfering in defendant's re-arrest by placing herself between the detectives and the police car and refusing to move when ordered to do so. She claimed not to know whether defendant was selling drugs on June 14, 2000.

from prison or other custodial facility or from detention pursuant to commitment by official proceedings. In the case of other detentions, *irregularity* or lack of jurisdiction *shall be a defense only if*:

(1) *The escape involved no substantial risk of harm to the person or property of anyone other than the detainee; or*

(2) *The detaining authority did not act in good faith under color of law.*

[*N.J.S.A.* 2C:29-5d (emphasis supplied).]

The defense was brought into our jurisprudence as part of the 1978 codification of the criminal law; it had no counterpart in prior law. *Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary,* p. 288 (1971) [hereinafter *Commentary*]. The intention was to provide "that nonviolent escapes from illegal arrest are not criminal" and even "violent efforts to escape" are immunized "in clear cases of abusive arrest by officers who know there is no basis for the arrest." *Ibid.*

Here, defendant requested the trial judge to charge the legal irregularity defense. In denying that request, the judge stated that he had not "heard any legitimate issues as to the legality of the arrest." Defendant contends, however, that his testimony at trial, which described the "lawless" behavior of the police, their "humiliating" search of his person, and the fact that no contraband was found on his person, could have led a jury to conclude his arrest was illegal.

The State argues that the trial judge correctly ruled that defendant failed to meet his burden of producing evidence entitling him to the jury instruction of legal irregularity, and, in the alternative, the omission was harmless error. The State contends that a mere claim of innocence does not entitle defendant to receive the jury charge of legal irregularity.

We agree with defendant that our opinion in *State v. Brown,* 239 *N.J.Super.* 635, 571 *A.*2d 1367 (App.Div.1990), governs this appeal. In *Brown* the defendant was one of two passengers in an automobile stopped by the police for suspicious driving. *Id.* at 637, 571 *A.*2d 1367. Alternate versions of what transpired next were put before the jury. According to the State, when asked for credentials the driver began searching through her purse, at which time the

officer saw a marijuana cigarette fall to the ground. *Id.* at 638, 571 *A.*2d 1367. The defense, however, argued the police simply grabbed the drivers' bag and searched through it. *Ibid.* Notwithstanding these divergent scenarios, there was no dispute that after the police discovered the drugs, Brown and the other passenger fled the scene and were subsequently convicted of escape. *Id.* at 639, 571 *A.*2d 1367.

Brown appealed his escape conviction, asserting a judgment of acquittal should have been granted because he was not under arrest at the time he allegedly escaped. Alternatively, defendant argued, even if he was under arrest, his panicked departure was not committed knowingly. We said, in pertinent part:

> [D]efendant's contention that he was entitled to a judgment of acquittal must fail. It was not incumbent upon the trial judge to determine whether or not the arrest was based on sufficient probable cause. Rather, it was for the jury to determine whether defendant was placed under arrest by the detaining officer and whether the officer acted "in good faith under color of law" in arresting defendant. This conclusion is compelled by *N.J.S.A.* 2C:29–5c which permits the defense of irregularity or lack of jurisdiction where the escape is not from a custodial facility or pursuant to a commitment by official proceedings, provided the escape involved no substantial risk of harm to the person or property of anyone other than the detainee.
>
> Even where such risk is involved, it is a defense to escape that the detaining authority did not act in good faith under color of law. *See N.J.S.A.* 2C:29–5c(2). Thus, where there is evidence of substantial risk of harm to the person or property of one other than the arrestee, the crime of escape is implicated unless the arrest was made in bad faith, without color of law. Here, defendant relied on the defenses in *N.J.S.A.* 2C:29–5c(1) and (2). Thus, the questions of whether there was an arrest and whether such arrest was made in good faith under color of law were proper questions for the jury as part of their consideration of defendant's defenses.
>
> [*Brown, supra,* 239 *N.J.Super.* at 643–644, 571 *A.*2d 1367 (citations omitted).]

Nevertheless, since the court in *Brown* had charged the jury on the irregularity defense, *id.* at 640–41, 571 *A.*2d 1367, the conviction was affirmed.

The Model Jury Charge on 2C:29–5 contains the legal irregularity defense with a direction to "charge where appropriate." The charge is as follows:

> In a case such as this, where the defendant is accused of escaping from the custody of an officer following an arrest, legal irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining

authority, is a defense, but only if (the escape involved no substantial risk of harm to the person or property of anyone other than the defendant) or (the detaining authority did not act in good faith under color of law). In other words, even where the officer has not followed proper procedures, or has acted unlawfully or improperly in making an arrest, still there is no defense unless (a defendant acts in a manner that will involve no substantial risk of harm to the person or property of anyone else) or (the officer failed to act in good faith based upon the officer's own understanding of the officer's lawful authority). Thus, simply put, the law provides that an escape from an illegal arrest is not criminal (where it involves no substantial risk of harm to another) or (even if it involves a substantial risk of harm to another, where there is a clear case of abusive arrest by an officer who knows there is not basis for the arrest).

It is for you to determine whether there has been a legal irregularity by the officer providing a defense to escape under the law as I have just defined it for you. The burden of proof is on the State to disprove the defense once it has been raised and the standard of proof is, as always, beyond a reasonable doubt.

[*Footnotes omitted.*]

In this case, the charge was even more "appropriate" than in *Brown*. Defendant's testimony raised at least a colorable issue as to whether his arrest was proper, that is, whether the officer "followed proper procedures, or ... acted unlawfully or improperly in making [the] arrest." The jury might have found in defendant's favor on this issue. Similarly, the jury might have found from defendant's testimony that he did not act in a manner that involved a "substantial risk of harm" to the officers or that even if it did, the officer "did not act in good faith under color of law." We do not hold that the defense is automatically applicable in every factual setting, but there is no doubt that a defendant does not bear a heavy burden in order to have the jury instructed on the defense.

"Legal irregularity" is not an affirmative defense since the section of the Code under which it arises does not so provide. *N.J.S.A.* 2C:1–13(c)(1).[5] Thus, it is an "ordinary defense," "as to which the defendant is neither explicitly given a burden of proof nor a burden of producing evidence." Cannel, *New Jersey Crimi-*

---

[5] Although legal irregularity has the ring of a justification defense, it is not an affirmative defense covered by *N.J.S.A.* 2C:3–1 since it is not covered under Chapter 3.

*nal Code Annotated,* comment 3 on *N.J.S.A.* 2C:1–13 (2002). "Ordinary defenses must be disproved by the State with no requirement that the defendant adduce any evidence whatsoever in their support." *Ibid.* Viewing the defense as "ordinary," defendant had a clear right to have the jury charged on legal irregularity, which the State bore the burden of disproving. "However, because there must be a rational basis in the facts before a defense will be charged to the jury, the distinction between ordinary and affirmative defenses is sometimes blurred." *Ibid.* Even if legal irregularity were an affirmative defense, the quantum of evidence required to raise the defense and require a jury instruction is not great. *State v. Kelly,* 97 *N.J.* 178, 200, 478 *A.*2d 364 (1984) ("any evidence . . . either in the State's or the defendant's case"). In *State v. Powell,* 84 *N.J.* 305, 317, 419 *A.*2d 406 (1980), the Court quoted with approval from *People v. Dortch,* 20 *Ill.App.*3d 911, 314 *N.E.*2d 324, 326 (1974), that "[a] defendant in a criminal case is entitled to have the jury consider any legally recognized defense theory which has some foundation in the evidence, however tenuous. . . . Very slight evidence on a theory of defense will justify the giving of an instruction." Of course, once an affirmative defense is introduced into the case, the State likewise bears the burden of disproving the defense beyond a reasonable doubt. *State v. Kelly, supra,* 97 *N.J.* at 200, 478 *A.*2d 364; *State v. Smith,* 322 *N.J.Super.* 385, 395–96, 731 *A.*2d 77 (App.Div.), *certif. denied,* 162 *N.J.* 489, 744 *A.*2d 1211 (1999); *N.J.S.A.* 2C:1–13b(1); *see also Commentary, supra,* at 36; 32 *New Jersey Practice, Criminal Practice and Procedure,* § 23.1, at 629 (Leonard N. Arnold) (rev. ed. 2002).[6]

---

[6] The federal rule is that, as a general matter, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States,* 485 *U.S.* 58, 63, 108 *S.Ct.* 883, 887, 99 *L.Ed.*2d 54, 61 (1988) (citing *Stevenson v. United States,* 162 *U.S.* 313, 16 *S.Ct.* 839, 40 *L.Ed.* 980 (1896)); *see United States v. Branch,* 91 *F.*3d 699, 711–714 (5th Cir.1996) and *id.* at 745–747 (Schwarzer, U.S.D.J., dissenting); *United States v. Montanez,* 105 *F.*3d 36, 39 (1st Cir.1997).

The State relies on *State v. Casimono,* 250 *N.J.Super.* 173, 593 *A.*2d 827 (App.Div.1991), *certif. denied,* 127 *N.J.* 558, 606 *A.*2d 370, *cert. denied,* 504 *U.S.* 924, 112 *S.Ct.* 1978, 118 *L.Ed.*2d 577 (1992) and *State v. Battle,* 256 *N.J.Super.* 268, 606 *A.*2d 1119 (App.Div.), *certif. denied,* 130 *N.J.* 393, 614 *A.*2d 616 (1992). Casimono was a front seat passenger in a car operated by co-defendant Guerrero that was stopped for motor vehicle violations. Both Casimono and Guerrero were removed from the car and subjected to pat down searches. While the officers were engaged with Guerrero, Casimono returned to the car and retrieved a large brown paper bag which he threw over a guardrail. The bag was subsequently found to contain cocaine. One of the officers then subdued Casimono and both he and Guerrero were arrested. *Id.* at 177–78, 593 *A.*2d 827. Casimono was indicted for drug offenses, aggravated assault on a police officer, resisting arrest, hindering apprehension and attempting to tamper with physical evidence. He was acquitted of aggravated assault but convicted of the remaining offenses. On appeal, we upheld the validity of the motor vehicle stop but concluded that the pat down searches of Casimono and Guerrero were illegal. *Id.* at 178–182, 593 *A.*2d 827. As a result, Casimono argued that the illegal pat down search required suppression of all evidence obtained thereafter and reversal of his conviction. With respect to the narcotics conviction, we held that Casimono's retrieval and abandonment of the paper bag was "sufficiently independent of the prior illegal pat down searches to warrant the conclusion that the discovery of the cocaine in the paper bag did not directly result from the police misconduct." *Id.* at 186, 593 *A.*2d 827. Concerning the convictions for hindering apprehension and resisting arrest, we took note of "a solid line of authority in other jurisdictions holding that an illegal detention or search ordinarily will not bar a conviction for an assault, escape, or other unlawful response committed by the person subjected to the unlawful police action." *Id.* at 183, 593 *A.*2d 827. Following that

---

Considered under this standard, there was "sufficient evidence" in this case "for a reasonable jury to find in defendant's favor."

line of authority, we held that even though Casimono's Fourth Amendment rights were violated by the illegal search he "did not have a right to resist the searches or the troopers' subsequent efforts to place [him] under arrest." *Id.* at 184, 593 A.2d 827.

To the extent that the court's opinion could be read as eliminating the statutory illegality defense to escape, it was clearly *dictum* since Casimono was not charged with escape. Thus, the State's reliance on that case is misplaced. However, the defendant in *Battle* was charged with escape, as well as possession of marijuana with intent to distribute and aggravated assault on a police officer. Battle was driving a car which was stopped by police for a motor vehicle violation. A search of the car revealed marijuana in a plastic bag. The officer told Battle and his two passengers they were under arrest, at which point one of the passengers fled on foot. While the officer's attention was directed toward the fleeing suspect, Battle got back into the car and began to drive away. The officer managed to get into the car and fought with Battle to prevent his escape. The officer was pushed out of the car and Battle fled, only to be reapprehended three days later. The officer suffered significant injuries in the melee.

The trial court concluded that the search of Battle's car was illegal and therefore suppressed the marijuana. However, the court permitted testimony as to the search and its results in connection with the remaining charges, reasoning "that even if the detention of a defendant and search of his car was illegal, defendant had no right to escape or assault the officer ...." *Battle, supra,* 256 *N.J.Super.* at 274, 606 *A.*2d 1119. We agreed, citing *State v. Casimono, supra.*

Here, the State's reliance is not entirely misplaced. However, it does not appear that Battle raised the legal irregularity defense, and for good reason. On the facts outlined above, it does not appear that the defense would have been appropriate. Battle's initial detention, as a result of the motor vehicle stop, was clearly lawful and his escape undisputedly involved a "substantial risk of harm" to the officer. *N.J.S.A.* 2C:29-5d. We cannot agree

with the State's broad reading of *Battle* and *Casimono*, which would virtually eliminate the statutory defense. We do agree with the State that the defense requires "more than a mere deficiency in probable cause" to justify an escape from unlawful custody. To bring the defense into play there must be some evidence, however slight, that the officer "did not act in good faith under color of law." As the Criminal Law Revision Commission Commentary made clear, this entails "clear cases of abusive arrest by officers who know there is no basis for the arrest." *Commentary, supra.* More is involved than just an absence of probable cause.

■ Nevertheless, we differ with the State as to whether defendant met his burden in this case. The State, in effect, urges us to accept its version of the facts. On the contrary, in deciding whether a basis has been presented to support a jury instruction on a defense theory, defendant is entitled to have us accept his version of the events. While we need not explore the full parameters of the evidence required to bring the 2C:29–5d defense into play, we are satisfied that in this case defendant met his burden and was entitled to an instruction on the statutory defense.

■ We also conclude that the omissive error could not, as the State argues, be deemed harmless. To the contrary, we have no doubt that it was "clearly capable of producing an unjust result," *R.* 2:10–2. As has been stated repeatedly, proper and adequate jury instructions are "at the core of the guarantee of a fair trial," with the result that erroneous instructions are "poor candidates for rehabilitation under the harmless error philosophy." *State v. Simon,* 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979). Hence "the rule of harmless error should be summoned only with great caution in dealing with the breach of fundamental procedural safeguards 'designed to assure a fair trial'." *Id.* at 206–207, 398 *A.*2d 861 (citation omitted).

In this case there was little dispute as to the escape charge. Defendant admitted being handcuffed and put into the police car. He also did not deny his unauthorized departure from the car subsequent to his apprehension. Without the defense, defendant's

conviction on the escape charge was virtually a foregone conclusion.

The jury found defendant not guilty on every count of the indictment except escape, thus rejecting the State's proofs as to the remaining counts. Therefore, the verdict demonstrates that the jury did not find the State's witnesses credible or its evidence persuasive beyond a reasonable doubt to convict defendant of possession of heroin, possession with intent to distribute, aggravated assault, or resisting arrest. As a result, since it is clear the jury did not lend great credence to the State's case, it is likely that if offered the opportunity to review the legal irregularity defense, the jury might well have accepted it and not convicted the defendant on the escape charge, either. Hence, the probability is high that the failure to charge the jury with the legal irregularity defense may have caused an unjust result. *R.* 2:10–2.

Reversed and remanded for a new trial.