**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0141-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

    v.

TONY ELI,

    Defendant-Appellant.

_____

Argued telephonically May 4, 2020 –
Decided June 4, 2020

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-10-1241.

Douglas R. Helman, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Douglas R. Helman, of counsel and on the brief).

Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Christopher L.C. Kuberiet, Acting

Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Tony Eli was found guilty of two counts of fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2), one count of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3), and one count of second-degree escape, N.J.S.A. 2C:29-5(a). The trial court imposed an aggregate custodial sentence of six years, with a two-and-a-half-year parole disqualifier.

The offenses stemmed from a June 9, 2015 incident in which Eli fled from a United States Marshal seeking to effectuate a warrant for his arrest. Eli's son, co-defendant Joshua Evans ("Evans"), was also convicted of hindering, assault, and facilitating escape for his role in the incident.[1]

Eli contends that repeated references to his open arrest warrant during the trial were improper and unduly prejudicial. He further argues the jury instructions the court gave on escape and self-defense failed to adequately explain material aspects of those concepts, warranting reversal. Lastly, he argues his sentence is excessive and that, in particular, the trial court did not

---

[1] Evans has not participated in this appeal.

sufficiently justify the imposition of consecutive sentences for resisting arrest and escape and should have merged those offenses.

For the reasons that follow, we affirm defendant's convictions, but remand for resentencing.

I.

The State's witnesses at trial, who were not countered by any defense witnesses, established the following facts.

On June 9, 2015, Eli was staying at a hotel in Iselin with several family members. Eli and Evans left the hotel late in the evening with Eli's wife, Debbie Evans, to pick up someone at the airport.

Before Eli and his family returned, at approximately 5:00 A.M., ten plainclothes officers with the United States Marshals Service Fugitive Task Force arrived at the hotel to enforce an open warrant for Eli's arrest. Deputy United States Marshal Chris Manna was among the officers on the task force that evening.

At trial, hotel night clerk John Maltz testified that Manna and five other officers approached him at the reception desk and asked if he knew where Eli was. Maltz told them that Eli had gone out and provided them with Eli's room number.

A-0141-18T1

Manna testified that he and the other officers went up to the room, where they found a teenager and a young child, but not Eli. The officers decided to set up surveillance around the hotel and wait for Eli to return. A team of officers positioned themselves in the front and rear parking lots. Three officers remained in the hotel room, while Manna sat next to Maltz at the front desk.

Shortly after 6:00 A.M., Eli entered the hotel lobby with his wife, son, and an unidentified fourth party. Manna recognized Eli, and Maltz confirmed his identity.

Using his cell phone, Manna informed the officers in the hotel room that Eli had entered the lobby and told them to come down to assist with the arrest. Manna then followed the group towards the elevator.

Manna testified that he approached the group as they boarded the elevator, identified himself as a police officer, and pulled his badge out from underneath his shirt. He told Eli that he had a warrant for his arrest and directed everyone to get off the elevator.

Eli initially complied and placed his hands against the wall next to the elevator.[2] Manna testified that his intention was to wait there with Eli for the

_____

[2] The activities by the elevators were filmed by a hotel surveillance camera, as were the activities in the lobby with another surveillance camera. Relevant

4

other officers to arrive. As they were waiting, Manna noticed that Evans was fidgeting and reaching into his pockets, so he told him to open his hands. When Evans failed to comply, Manna attempted to grab his hands while repeatedly telling Evans, "Let me see your hands." Hearing the increasingly loud interaction, Maltz ran outside to flag down the other officers.

As Manna turned to deal with Evans, Eli took his hands off the wall and began running around the corner towards the hotel's front entrance. Manna left Evans and pursued Eli, catching up to him near the front door. Manna grabbed Eli, tackled him to the floor, placed him face down, climbed on top of him, and began to handcuff him.

Both Evans and his mother took turns rushing at Manna, attempting to push him off Eli. Manna testified that he put his arm out in self-defense and repeatedly told them to get back, but Evans continued to attack him. Eli began to struggle with Manna, throwing his elbows and attempting to rise off the ground. Manna directed him to stay down and put his hands behind his back,

---

portions of the surveillance footage were played for the jury. The parties have supplied us on appeal with a recording of the surveillance footage, and we have viewed it at their urging. The recording is substantially consistent with the testimony of the State's witnesses describing the events.

A-0141-18T1

but Eli refused to comply. Evans roamed around the lobby, circling Manna while his father struggled with him on the ground.

Eli then broke free from Manna, got up off the ground, and ran towards the front door of the hotel. As Manna gave chase, Evans stuck his foot out in an unsuccessful attempt to trip him. Manna caught up to Eli at the second set of lobby doors, shoving him from behind. Eli went face first into the front sliding door, then fell to the ground. Manna jumped on top of Eli and began to handcuff him.

At that point, backup personnel arrived, and the team of officers arrested Eli. Evans and his mother were also taken into custody. Manna testified that he suffered injuries to his neck, back, and shoulders during the altercation, but did not seek medical attention.

The indictment charged Eli with fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (Count Two); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3) (Count Four); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (Count Six); and second-degree escape, N.J.S.A. 2C:29-5(a) (Count Nine).[3]

---

[3] There is no indication that Eli was charged with any federal offenses arising out of this encounter with federal officers.

6

The indictment also charged Eli's son, Evans, with obstruction of justice, resisting arrest, hindering apprehension, assault, and facilitating escape.[4]

Eli and Evans were tried in absentia by a jury over three days in May 2018. Maltz and Manna testified for the State, and the security video footage of the incident was shown to the jury.

After the State's evidence was presented, Eli's counsel moved for a judgment of acquittal on the escape count, which was denied.

The jury found Eli guilty on all counts. Evans was convicted of hindering, assault, and facilitating escape, but was acquitted on the obstruction of justice count.[5]

At sentencing, Eli renewed his motion on the escape count, moving for a judgment notwithstanding the verdict, which was also denied. Eli was then sentenced to five years' imprisonment with thirty months' parole ineligibility on Count Nine (second-degree escape), and one-years' imprisonment on Count Two (resisting arrest) to be served consecutively. The court merged Counts Four and Six into Count Nine.

---

[4] Eli's wife was also charged in the indictment, but she passed away before trial.

[5] The resisting arrest charge against Evans was dismissed during the charge conference.

A-0141-18T1

This appeal followed.

II.

Eli presents the following arguments for our consideration:

POINT I

THE JUDGE ALLOWED THE STATE TO REPEATEDLY REFER TO THE OPEN WARRANT FOR ELI'S ARREST, AND FAILED TO OFFER A SATISFACTORY LIMITING INSTRUCTION, PREJUDICING ELI AND RENDERING HIS TRIAL UNFAIR

POINT II

THE JURY INSTRUCTIONS DID NOT PROPERLY EXPLAIN THE MATERIAL ELEMENTS OR DEFENSES OF THE CHARGES AGAINST ELI, WARRANTING REVERSAL

    A.    The judge did not adequately explain that a completed 'arrest' is necessary for a conviction for escape, thus failing to explain a material element of the charge.

    B.    The judge gave the wrong self-defense instruction for resisting arrest, prejudicing Eli. (Not raised below)

POINT III

A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE JUDGE INEXPLICABLY ONLY MERGED TWO OF THE RESISTING ARREST COUNTS INTO THE ESCAPE COUNT, VIOLATED STATE V. YARBOUGH BY IMPOSING

8

CONSECUTIVE SENTENCES, AND IMPERMISSIBY CONSIDERED DISMISSED CHARGES IN FASHIONING THE SENTENCE.

We discuss these points, in turn.

A.

Eli argues the State's multiple references before the jurors to his open arrest warrant were unduly prejudicial under N.J.R.E. 404(b) and violated his right to a fair trial. He further contends the trial judge failed to give an adequate limiting instruction to the jury concerning these references. We reject these contentions.

The applicable standard of review of this evidential issue is well established. Criminal trial court rulings on evidential admissibility are entitled to a strong degree of deference and are reviewed under an abuse of discretion standard. State v. Prall, 231 N.J. 567, 580 (2018). Such rulings are therefore upheld unless "there has been a clear error of judgment." State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling is so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Brown, 170 N.J. at 147).

9

The pertinent evidence rules on this issue are N.J.R.E. 401 (relevance), N.J.R.E. 403 (discretionary grounds for exclusion of relevant evidence), and N.J.R.E. 404(b) (character proof). We are satisfied that the trial court adhered to all of these rules. Even if we were to adopt defendant's contentions of error, the alleged errors were not "clearly capable" of depriving him of a fair trial. R. 2:10-2.

Case law instructs that evidence that a warrant was issued "might necessarily be put before a jury in order to establish that the police acted properly." State v. Marshall, 148 N.J. 89, 240 (1997). For instance, "[a] search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily." State v. Cain, 224 N.J. 410, 435 (2016). Nevertheless, "a prosecutor . . . may not repeatedly mention that a search warrant was issued by a judge if doing so creates the likelihood that a jury may draw an impermissible inference of guilt." Ibid.

At a pretrial hearing in this case, defense counsel jointly objected to any reference to arrest warrants occurring during the trial. The trial court ruled that the open warrant for Eli was an integral fact in establishing the charge of resisting arrest, because the State was required to prove that a law enforcement

officer was effecting a lawful arrest and that Eli purposely attempted to prevent him from effecting that arrest. See N.J.S.A. 2C:29-2. Relying on the New Jersey Supreme Court's reasoning in Marshall, the trial judge concluded that it would be insufficient and "frankly, ridiculous for the jury to just be told that the police wanted to speak with the defendant; [it was] more than that." However, the judge precluded the State from revealing to the jurors why the warrant was issued.

During trial, the prosecutor referenced the arrest warrant twice in opening and twice in closing, in both instances to explain why the officers had been at the hotel and what Manna said when he approached Eli. The warrant was mentioned three times from Manna in response to questioning, again establishing the basic facts surrounding the incident. In addition, questions about the warrant were posed to Manna several times by defense counsel for both Evans and Eli.

On appeal, Eli argues that these references to the arrest warrant were prejudicial and rendered his entire trial unfair, citing both Cain, 224 N.J. at 435-36, and State v. Alvarez, 318 N.J. Super. 137, 148 (App. Div. 1999).

In Cain, the prosecutor "mentioned the existence of a search warrant no less than fifteen times" throughout the trial and repeatedly emphasized that a

11

Superior Court judge had issued that warrant. 224 N.J. at 435. The Court held that "[t]he constant drumbeat that a judicial officer issued a warrant" went beyond what was necessary to demonstrate that police were acting with lawful authority and had the "capacity to lead the jury to draw an impermissible inference that the court issuing the warrant found the State's evidence credible." Id. at 436.

Similarly, the prosecutor in Alvarez made three references to an arrest warrant for the defendant and six references to a search warrant, described as being issued by a judge. 318 N.J. Super. at 147. We found the numerous references to both the arrest and search warrants, coming "directly out of the mouth of the prosecutor," to be needlessly prejudicial, particularly because the credibility of the officers' account was not at issue. Id. at 147-48.

In this case, the existence of the arrest warrant was highly relevant under N.J.R.E. 401 in explaining why the task force was at the hotel looking for Eli. Unlike the prosecutors in Cain and Alvarez, who made numerous references to the warrants as being issued by a judge, the State here only directly mentioned Eli's arrest warrant in the course of providing a basic factual narrative of the case during opening and closing. The prosecutor never described the warrant as being issued by a judge and never elicited that detail from a witness during

12

testimony. All other references to the arrest warrant were made either by Officer Manna—when answering basic factual questions about the incident—or by defense counsel.

The defense's theory of the case was that Eli had no idea there was a warrant for his arrest and did not know Manna was a real law enforcement officer. During cross-examination, counsel for both Eli and Evans brought Manna's credibility into question, particularly as to how he identified himself and his purpose for being there when approaching Eli. Unlike in Alvarez, where the credibility of the officers' account was not in question, this case required the State to demonstrate that Manna and the rest of the task force were acting with lawful authority, pursuant to a warrant. The court did not misapply its discretion under N.J.R.E. 403 in declining to exclude the references, within the sensible boundaries it had established.

We also discern no transgression of the character proof limitations set forth in N.J.R.E. 404(b). Even assuming, for purposes of discussion, that we regard Eli's past conduct that led to the issuance of the federal warrant as a "prior bad act" under Rule 404(b), the trial judge appropriately limited the references to the warrant so as to guard against the jury inferring that Eli has a propensity to violate the law.

Moreover, the judge provided the jury with a clear limiting instruction in this regard. The judge explicitly told the jurors they must disregard the warrant, which was something they "should not consider in any way, shape, or form, except that it was basically part of the [federal officers'] procedure." Defense counsel did not object to this instruction. There is no error, let alone plain error, in this very clear instruction.

B.

Eli next contends the jury instructions did not adequately explain certain material elements or defenses of the charges against him.

First, he argues that the trial court failed to explain a material element of the charge of escape, because it did not provide the jury with an adequate definition of "official detention." Second, Eli contends the court erred in giving the general self-defense instruction rather than the self-defense charge tailored for resisting arrest, and that he was prejudiced by such error.

In addressing these claims on appeal, we note that Eli did not object to the jury instructions at trial, either in the charge conference or after the charge was issued. This lack of objection narrows our scope of review. "A claim of deficiency in a jury charge to which no objection is interposed 'will not be

A-0141-18T1

considered unless it qualifies as plain error . . . ." State v. R.B., 183 N.J. 308, 321-22 (2005) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

That said, we are mindful that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981) (citing Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 563-64 (App. Div. 1951)). The trial court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." State v. Reddish, 181 N.J. 553, 613 (2004) (citing State v. Thompson, 59 N.J. 396, 411 (1971)).

When evaluating whether claimed defects in the jury instructions rise to the level of reversible error, the alleged error must be "viewed in the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006). If, upon reviewing the charge as a whole, the reviewing court finds that prejudicial error did not occur, then the jury's verdict must stand. State v. Coruzzi, 189 N.J. Super. 273, 312 (App. Div. 1983).

Neither of the claimed defects in the jury charge identified by Eli for the first time on appeal amount to reversible error.

A-0141-18T1

1.

Under N.J.S.A. 2C:29-5(a), the crime of escape requires the State to prove two elements: (1) the defendant knowingly removed himself from official detention, and (2) did so without lawful authority. See Model Jury Charges (Criminal), "Escape (N.J.S.A. 2C:29-5a)" (revised June 5, 2006). Among other things, the statute defines "official detention" as "arrest," but does not provide a definition of "arrest." N.J.S.A. 2C:29-5(a).

During deliberations, the jury submitted a question to the judge: "What is official detention?" After consulting with counsel, the judge provided the following explanation: "Official detention means arrest. Arrest means, seize someone by legal authority for the purpose of taking into custody." Defense counsel did not object to this clarified instruction.

Eli now argues that the trial judge erred in failing to provide the jury with a sufficient definition of "arrest." He cites the jury instruction provided by the trial court in State v. Brown, 239 N.J. Super. 635, 640 (App. Div. 1990), as an example of a more fact-sensitive and appropriate definition of "arrest." That jury charge in Brown went well beyond the Model Jury Charge by stating that "an individual fleeing from an officer would not be guilty of an escape unless

the individual had first had his liberty of movement restrained by that officer." Ibid.

Eli argues that, rather than reading the model jury charge as written, the trial judge should have instead tailored the jury instruction to the facts of his case and told the jury "that for an escape to occur, the arrest must be over, even for a moment, so that, logically one may 'escape' from it." (emphasis added).

Although this explanation would have been more favorable to Eli, the model jury charge for escape contains no such language. Nor do the notes to the model charge call for such verbiage.

"[I]nsofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed and read in their entirety to the jury." State v. R.B., 183 N.J. 308, 325 (2005). "The process by which model jury charges are adopted in this State is comprehensive and thorough; our model jury charges are reviewed and refined by experienced jurists and lawyers." Ibid.

Here, the trial court's jury instruction adhered closely to the language from the Model Jury Charge for escape, which defines official detention as "arrest." The only way in which the judge's instruction deviated from the model charge was by omitting other factually inapplicable and potentially confusing definitions of official detention, such as "detention in any facility for custody of

17

persons under charge or conviction of a crime or offense" and "detention for extradition or deportation." When the jury asked for further clarification on the provided term "arrest," the judge gave an explanation which was accepted by all parties.

Because there was no objection to the instruction at trial, it may only be the basis for reversal if it amounted to plain error. R. 2:10-2. Plain error in a jury charge is one with the possibility to produce an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Jordan, 147 N.J. 409, 422 (1997) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Here, there was nothing in the instruction provided that could have led the jury to reach an unjust result.

Folded into Eli's claim that the jury instruction for escape was insufficient is an assertion that the charges for resisting arrest and escape were somehow incompatible in this case. Eli essentially renews the argument he made to the jurors during trial—that it would have been impossible for him to escape an arrest he was also accused of resisting.

However, the evidence admitted at trial reasonably supports the sequential offenses of both escape and resisting arrest, as the judge reasonably explained

when denying Eli's motion for judgment notwithstanding the verdict on the escape count.

First, Eli resisted arrest when he ran from Manna outside the elevator. Manna then caught up to Eli in the main lobby. As the video confirms, Manna tackled Eli, climbed on top of him, got him face-down on the floor, and attempted to snap on handcuffs. At that point, Eli's liberty was restrained sufficiently to be considered under arrest.

Then, with the aid of his relatives who were interfering with and distracting the officer, Eli used force to escape from Manna, before finally being apprehended in the vestibule. The sequence of events reasonably could be found to involve, first, an arrest that defendant resisted until the officer got him down on the lobby floor, and, second, an escape from that restraint. The handcuffs did not have to be fastened in order to consider the person as being under arrest. See State v. Shaw, 237 N.J. 588, 612-613 (2019) (holding that placing a suspect in handcuffs is only one factor which plausibly demonstrates the suspect is under arrest).

Eli had already been commanded by the officer to place his hands up against the wall by the elevator. Having then run away and been tackled by the officer, and forced to the floor in a prone position, he logically was by that point

surely "under arrest." Had the officer posed accusatory questions to Eli while he was in that prone position, his counsel would likely have argued such queries would be a custodial interrogation and required Miranda[6] warnings.

Eli's subsequent conduct in breaking free from the officer in the lobby and running out of the hotel reasonably can be regarded as an escape. By his actions, Eli knowingly removed himself from official detention, and did so without lawful authority. N.J.S.A. 2C:29-5(a).

Because the evidence admitted at trial reasonably supports both the charge of escape and the jury's guilty verdict, the trial court properly denied Eli's motions on the escape count. The court's associated jury instructions were fair and adequate.

2.

Eli next argues, for the first time on appeal, that the trial court erred by giving the general self-defense jury charge, rather than the self-defense charge tailored for resisting arrest. See Model Jury Charges (Criminal), "Justification-Self Defense Resisting Arrest (N.J.S.A. 2C:3-4)" (approved Oct. 17, 1988). He claims that he was prejudiced by use of the general self-defense instruction

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

because it requires a higher threshold of force from the aggressor than the resisting arrest charge.

Both self-defense charges provide that the defendant is justified in using force to resist "unlawful force," and both charges define unlawful force the same way: "force used against a person without the person's consent in such a way that the action would be a civil wrong or a criminal offense." See Model Jury Charges (Criminal), "Justification-Self Defense In Self Protection (N.J.S.A. 2C:3-4)" (revised June 13, 2011).

However, the charges diverge in how they frame that unlawful force within the surrounding circumstances. The general instruction describes the relevant circumstance as "[w]hen a person is in imminent danger of bodily harm," making it applicable to any situation in which the defendant felt reasonably threatened with injury. The resisting arrest charge, on the other hand, provides the following context for jury deliberation: "An officer may use, to effect an arrest, the amount of force necessary to accomplish the arrest. Therefore, you must determine whether the officer used substantially more force than was necessary to effect the arrest of the defendant."

Eli maintains that the "imminent bodily harm" language of the general charge imposes a higher threshold to trigger the application of self-defense than

the "substantially more force than was necessary" language of the resisting arrest charge. This interpretation of the two self-defense charges ignores a critical component of the resisting arrest instruction.

Unlike the general self-defense charge, in which the defendant need only reasonably fear some imminent bodily harm, the resisting arrest charge anticipates that the defendant will be lawfully subject to the "amount of force necessary to accomplish the arrest." The defense is therefore only triggered if the jury finds that the officer used "substantially more force than was necessary" to complete that arrest. If anything, the threshold triggering the application of the resisting arrest charge is higher than the general self-defense charge—the very opposite of what Eli contends on appeal.

Eli cites State v. Simms, 369 N.J. Super. 466, 473 (App. Div. 2004), in support of the proposition that failure to provide the proper jury instruction on self-defense constitutes plain error, requiring reversal. However, the Simms court reversed the defendant's conviction because no self-defense charge was issued, even though the defendant testified at trial that the arresting officer was using excessive force. Ibid.

Here, a self-defense instruction was provided at defense counsel's request, despite the fact that the defendant did not even argue self-defense during

opening or summation. In fact, the defense argued that Eli fled because he did not know Manna was a police officer, not because Manna was using excessive force. The prosecution likewise did not address self-defense issues in its own summation, but instead focused on restating the facts of the case and rebutting the argument that Eli did not know Manna was really an officer. Furthermore, defense counsel did not object to the self-defense instruction that was read.

Although we need not rely on it, the doctrine of invited error applies here, because defense counsel requested the self-defense instruction and did not object to the proffered charge. The invited error doctrine applies when the trial court's alleged error was "induced, encouraged, acquiesced in or consented to by defense counsel." State v. Corsaro, 107 N.J. 339, 345 (1987) (quoting State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1973)). If the invited error "does not deflect the jury from a fair consideration of the competent evidence of record and from reaching a verdict of guilty which is supported overwhelmingly by properly admitted evidence," the conviction must not be overturned. State v. Simon, 79 N.J. 191, 207 (1979).

Here, the substitution of the general self-defense charge for the resisting arrest self-defense charge had no evident prejudicial impact on the jury's ability to consider the evidence. Because defense counsel did not even argue self-

defense in summation, the error did not manifestly affect his trial strategy or undermine his theory of the case. The court's issuance of the general self-defense instruction does not rise to the level of plain error under Rule 2:10-2.

## C.

Eli's final arguments concern his sentence. As we have noted, the trial court imposed an aggregate six-year custodial sentence. The sentence consisted of a five-year term with a two-and-a-half-year parole ineligibility period on the escape count, which the court merged with two of the resisting arrest counts (four and six). Added to that was a consecutive one-year custodial term on the remaining resisting arrest count, which the court described as "the incident at the elevator."

Eli contends the court's sentencing analysis is flawed and inadequate in two respects: (1) it did not adequately explain why the court declined to merge one of the resisting arrest counts, and (2) did not mention or apply the analysis required under State v. Yarbough, 100 N.J. 627, 643-44 (1985), to justify the imposition of the consecutive sentences. We agree and remand for resentencing to rectify these problems.

The question of whether two offenses should be merged at sentencing is a flexible one. State v. Cole, 120 N.J. 321, 325-26 (1990). Among other things,

the sentencing court should consider "the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed." Cole, 120 N.J. at 327.

Here, the trial court's brief discussion of merger in the sentencing transcript does not illuminate fully its reasoning for declining to merge all of the resisting arrest counts, other than the observation that defendant's conduct by the elevators was distinct from his later conduct in the lobby. Although there is a reasonable basis to segregate the events in that fashion, the court did not discuss the other merger considerations noted in Cole.

For example, defendant stresses in his brief that the entire sequence of events consumed less than two minutes. Although that factor of time is not dispositive of merger (such as where, say, a murderer shoots two victims in a rapid succession), it is at least a factor worthy of discussion in the context of this case. The other Cole merger factors should also be noted and weighed.

Likewise, the trial court did not discuss or apply the analysis required under Yarbough to justify the consecutive sentences imposed, i.e., five years for escape stacked upon one year for resisting arrest. Yarbough requires sentencing

25

courts pondering the imposition of consecutive terms to consider such things as: (1) whether the crimes and their objectives were independent of one another; (2) whether the crimes involved separate acts or threats of violence; (3) whether the crimes were committed at different times or places; (4) whether the crimes involved multiple victims; and (5) whether the convictions are numerous. Yarbough, 100 N.J. at 643-44.

We have discussed, supra, the first three of these factors to some partial extent and agreed with the State that evidence reasonably supports defendant's guilt of both resisting arrest and escape. However, the question of whether Eli's "objectives" were independent of one another was not addressed by the trial court. Nor did the trial court expressly consider the identities of the victims, and the numerosity of counts. A full Yarbough analysis was not performed.

Because of these omissions, we are constrained to remand this matter for resentencing, to be conducted in accordance with Cole, Yarbough, and other pertinent case law on merger and consecutive sentences.[7]

Affirmed as to the convictions; remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] We understand that defendant is apparently scheduled to be paroled soon in July 2020, but that does not moot the sentencing issues. We expedited the scheduling of this appeal at defendants' request.

A-0141-18T1